IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>The Pet Apothecary LLC,<br><br>    Reorganized Debtor.[1] | Chapter 11<br><br>Case No. 24-11192 (TMH)<br><br>**Related Docket No. 146**<br><br>Objections Due: October 8, 2025 at 4:00 p.m. (ET)<br>Hearing Date: TBD |

**MOTION TO RESCIND SETTLEMENT AGREEMENT AND / OR MODIFY OR SET ASIDE ORDER APPROVING STIPULATION BY AND BETWEEN REORGANIZED DEBTORS AND DR. RINKU PATEL REGARDING PROOF OF CLAIM NO. 72**

  Dr. Rinku Patel ("**Dr. Patel**" or the "**Claimant**"), through her undersigned counsel, hereby moves the Court to rescind the Stipulation she entered into with the Debtor's regarding Claim No. 92 or, in the alternative, modify or set aside the *Order Approving Stipulation by and between Reorganized Debtors and Dr. Rinku Patel Regarding Proof of Claim No. 72* [Docket No. 146], for the reasons set forth below.

**INTRODUCTION**

  1. Dr. Patel seeks to have the Stipulation, as approved by the Court, be rescinded on grounds of unilateral mistake or inadvertence as it was entered into without consideration for a waiver of non-debtor entities against which Dr. Patel has significant state court claims. Alternatively, Dr. Patel requests that the Court set aside the order approving the Stipulation or modify it to delete the waiver benefitting non-Debtor entities to permit Dr. Patel to continue to pursue actions against non-debtors in other forums.

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is The Pet Apothecary, LLC (6074). The address of the Reorganized Debtor's corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062. On May 2, 2025, the Court entered an order closing the chapter 11 cases of The Pet Apothecary, LLC's debtor affiliates (collectively, the "**Affiliated Debtors**"). A complete list of the Affiliated Debtors, along with their federal tax identification numbers, is available through the Court's CM/ECF electronic case filing system (https://ecf.deb.uscourts.gov/) under Case No. 24-11192, at Docket No. 4.

2. While Dr. Patel authorized her counsel to agree to a settlement setting the amount and type of Claim against the Debtor, Claimant did not understand or appreciate that the Stipulation waived valuable state court claims against non-debtors. As explained below and noted in the Declaration of Dr. Patel attached as **Exhibit A**, in a stipulation resolving a claim objection, Dr. Patel never would have agreed to waive million-dollar claims against non-debtor parties who were uninvolved in the claims objection process for a mere $13,000 payment from the Debtors.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Claimant consents, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are 11 U.S.C. § 105 and Rule 60(b)(1) of the Federal Rules of Civil Procedure ("*FRCP*"), as incorporated by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

## BACKGROUND

6. Dr. Patel served as the Chief Executive Officer of Debtor OptioRx, LLC ("*OptioRx*") from February 1, 2022, until her wrongful termination on February 5, 2024, when OptioRx fired her after Dr. Patel raised various concerns about OptioRx's regulatory compliance with the federal and state statutes governing its operations.

7. On June 7, 2024 (the "*Petition Date*"), OptioRx and its affiliates commenced with the Court voluntary cases (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"). The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

8. On June 26, 2024, the Court entered the *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 104] (the "*Bar Date Order*"). Pursuant to the Bar Date Order, the deadline for creditors to file proofs of claim was August 7, 2024, at 5:00 p.m. (Eastern Time) (the "*Bar Date*").

9. Prior to the Bar Date, on August 2, 2024, Dr. Patel filed an unsecured claim in the chapter 11 case of OptioRx in the amount of $1,527,074.55, which is comprised of claims against OptioRx for breach of contract, statutory legal fees, and violations of the Illinois Wage Payment and Collection Act, of which Dr. Patel asserted $15,150.00 was entitled to priority under section 507(a)(4) of the Bankruptcy Code ("*Claim No. 72*").

10. Additionally, Dr. Patel has litigation currently pending Illinois federal court against certain non-debtor parties (including, specifically, prior officers and directors of OptioRx) in which Dr. Patel seeks over $1 million in damages for violations of the Illinois Wage Payment and Collection Act and other relief, including for her earned, but unpaid, severance, bonuses, contractually guaranteed legal fees; and other damages.

11. On October 17, 2024, the Reorganized Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization of OptioRx, LLC, et al.* [Docket No. 480] (the "*Plan*") and on the same date, the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming*

3

the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of OptioRx, LLC, et al. [Docket No. 484].

12. On March 14, 2025, the Debtors filed the *Debtors' Third (Substantive) Omnibus Objection to Claims Pursuant to Bankruptcy Code Section 502, Bankruptcy Rule 3007, and Local Rule 3007-1* [Docket No. 776] (the "*Claim Objection*"), in which the Debtors objected to Claim No. 72.

13. On April 4, 2025, Dr. Patel filed *Dr. Rinku Patel's Opposition to Debtors' Third (Substantive) Omnibus Objection to Claims Pursuant to Bankruptcy Code Section 502, Bankruptcy Rule 3007, and Local Rule 3007-1* [Docket No. 844] (the "*Opposition*").

14. On May 2, 2025, the Court entered the *Order and Final Decree Closing Certain of the Chapter 11 Cases* [Docket No. 870] (the "*Case Closing Order*"). Pursuant to the Case Closing Order, *inter alia*, the chapter 11 case of The Pet Apothecary LLC (the "*Reorganized Debtor*"), Case No. 24-11192 (TMH) (the "*Remaining Case*") remained open, each of the Debtors' other Chapter 11 Cases were closed, and all matters, including any claim objections with respect to claims against the Debtors, are to be filed, administered, and adjudicated in the Remaining Case.

15. On August 6, 2025, the Reorganized Debtor filed a Certificate of Counsel [Docket No. 145]. This Certificate of Counsel included a Stipulation attached as Exhibit A to the Proposed Order (the "*Stipulation*"). The principal purpose of this Stipulation was to resolve the Claim Objection and Opposition, the effect of which was to reduce Claim No. 72 to $13,000 as a Class 4 Other Priority Claim and $1,514,074.55 as a Class 6 general unsecured claim.

16. On August 6, 2025, the Court entered the *Order Approving Stipulation by and between Reorganized Debtors and Dr. Rinku Patel Regarding Proof of Claim No. 72* [Docket No. 146] (the "*Claim Order*").

17.     Thereafter, the Reorganized Debtor paid Dr. Patel $13,000 on account of the priority portion of Claim 72.

## RELIEF REQUESTED

18.     By this motion, Dr. Patel requests entry of an order rescinding the Stipulation based on unilateral mistake (and requiring her to re-pay the $13,000 she received), thus putting the Debtors and Dr. Patel back in the position they were prior to the entry of the Claim Order. The parties can then either come to an agreement on the proof of claim (but one that does not impact unrelated third-party claims) or have an evidentiary hearing on the validity of Claim No. 72.

19.     In the alternative, Dr. Patel seeks an order modifying the order approving the Stipulation to remove the waiver of claims against non-debtor parties to permit Dr. Patel to pursue claims against the non-debtor parties in other forums.

## ARGUMENT

20.     In a bankruptcy case where a creditor seeks to rescind a settlement agreement based on unilateral mistake, Delaware state law governs. State law generally governs the construction and enforcement of settlement agreements in federal court, including those approved by a bankruptcy judge. *See, Maya Swimwear Corp. v. Maya Swimwear, LLC*, 855 F. Supp. 2d 229, 234 (D. Del. 2012) (*quoting Excelsior Ins. Co. v. Pennsbury Pain Ctr.,* 975 F. Supp. 342, 349 (D.N.J. 1996) ("State law governs the construction and enforcement of settlement agreements in federal court.").

21.     Delaware law acknowledges that the remedy of rescission of a contract due to a unilateral mistake is "extraordinary." *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 861 (Del. Ch. 2016). This remedy is only available under Delaware law when a party meets the following conditions: "(1) the enforcement of the agreement would be unconscionable;

5

(2) the mistake relates to the substance of the consideration; (3) the mistake occurred regardless of the exercise of ordinary care; and (4) it is possible to place the other party in the status quo." *In re Enstar Corp.*, 604 A.2d 404, 411 (Del. 1992) (*citing 13 Willison on Contracts* § 1573 (3d Ed. 1970)).

22.  Here, these factors are clearly met:

(a) <u>Enforcement of the agreement would be unconscionable.</u> An agreement is considered unconscionable when there is "an absence of meaningful choice, and the contract terms unreasonably favor one of the parties." *Rohm & Haas Elec. Mat'ls, LLC v. Honeywell Int'l, Inc.*, No. 06-297-GMS, 2009 U.S. Dist. LEXIS 32201, at *25 (D. Del. Apr. 16, 2009). The Stipulation here involved the allowance and payment of $13,000 to resolve Dr. Patel's priority claim against the Debtors. While it is unclear how much unsecured claims will receive under the Plan, it certainly won't be payment in full. Yet because of the language that was added by the Debtors' attorney – and reasonably not understood by the Claimant – the result would entail Claimant waiving claims worth over $1 million against non-debtor parties who were never involved in the claims objection process. Dr. Patel never understood or had reason to expect that her far larger claims against solvent non-debtors were being waived in a $13,000 settlement of her priority claim against the Debtor's estates. That result is unconscionable and only favors and benefits non-debtor parties who were not even involved in the negotiations between Dr. Patel and the Reorganized Debtor.

(b) <u>The mistake relates to the substance of the consideration</u> – Dr. Patel never would have agreed to a $13,000 claim allowance in the bankruptcy if she had realized she was waiving over $1 million in claims against third party non-debtors. The priority claim Dr. Patel asserted is a valid claim against the Debtor, for wages owed. The Claim Objection only referenced the priority portion of Claim No. 72. Dr. Patel resolved the claim in order to prevent spending

6

attorneys' fees fighting over about $2,000. The unsecured portion of the claim was not objected to and was only included in the Stipulation on Debtor's request to resolve the full claim. In no way did Dr. Patel think she was waiving claims against other parties unrelated to this claim objection process. Her counsel pursuing the non-debtor claims was not aware of the Stipulation.

    (c) <u>The mistake occurred regardless of the exercise of ordinary care:</u> The Claimant is not an attorney, and cannot be expected to have understood the release provision, let alone expect or contemplate that a "mutual" release in a $13,000 settlement of a bankruptcy claim might have been drafted so as to release claims she was pursuing against non-debtors (she is being represented by other counsel in connection with those claims, but Claimant did not contemplate having them review a settlement she believed solely involved her claim against the Debtors).

    (d) <u>It is possible to place the parties in the status quo.</u> If the Stipulation is rescinded and Doctor Patel returns the $13,000, the parties will either (a) litigate over allowance of the claim or (b) re-enter into a settlement, just without the unconscionable release.

  23. Alternatively, this Court has the equitable power under Section 105(a) of the Bankruptcy Code and FRCP Rule 60(b), incorporated by Bankruptcy Rule 9024 to modify or set aside the Order approving the Stipulation.

  24. FRCP Rule 60(b) states: "On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; [or] (6) any other reason that justifies relief."

  25. "The bankruptcy court, in exercise of its equitable powers, can set aside a stipulation entirely if the interests of justice so require and if the parties can be restored to the positions they occupied before they entered the stipulation." *A & A Sign Co. v. Maughan*, 419 F.2d 1152, 1155 (9th Cir. 1969) (internal citations omitted).

26. The decision to relieve a party from an order under Rule 60(b) "is at bottom an equitable one, taking account of all relevant circumstances . . . ." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 113 S. Ct. 1489, 1498 (1993). Courts should take into account factors such as prejudice to the debtor, any potential impact on judicial proceedings, the reason for the inaction or omission, and the good faith of the movant. *Id.*

27. There would be no prejudice to the Debtor, and no impact on these proceedings. The funds paid on account of the priority claim easily can be returned to the estate. The parties can continue discussions to settle the claim objection or can return to this Court for resolution.

28. Further, as explained above, the Claimant thought she was waiving claims that affected the bankruptcy case only, and not the claims brought in Illinois. Where "[t]he parties did not actually agree upon the terms in the stipulation. The stipulation is not, then, binding and enforceable." *In re Nicholson Indus., Inc.*, 73 B.R. 266, 268-69 (Bankr. N.D. Ohio 1987). Dr. Patel would never have consented to a release of unrelated non-debtor claims in a stipulation allowing her priority claims – which as discussed above would likely have been allowed in any case (but were settled for a $2,500 reduction to minimize attorneys' fees). She understood the Stipulation to be settling the bankruptcy court claims only, not releasing all non-debtor parties completely in any conceivable forum.

29. As stated above, it is unreasonable to think that Dr. Patel was consenting to resolve approximately a million-dollars' worth of claims against **non-debtor parties** in the context of an omnibus claim objection, which referenced **only the priority portion** of her filed claim against OptioRx, and which was worth, at maximum, $15,150. The Federal Rules of Civil Procedure anticipate this kind of inadvertence, and Rule 60(b)(1) exists as a remedy. In particular, paragraph 7 of the Stipulation has expansive language preventing Dr. Patel from asserting claims in other

8

forums and venues against virtually any parties related to the Debtors, including the ongoing litigation in Illinois. The Claimant only believed she was resolving her filed claim in this Court.

30.     If the Court is not inclined to rescind the Stipulation entirely or set aside the order approving it, the Claimant urges the Court to modify the Stipulation with changes to the language in paragraph 7 to allow Dr. Patel to pursue claims in other forums.

31.     "Stipulations may be modified by Courts only where necessary to prevent a 'manifest injustice.'" *In re Forde*, 507 B.R. 509, 520 (Bankr. S.D.N.Y. 2014) (quoting *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur.*, 71 F. Supp. 2d 394, 397-99 (D. N.J. 1999)). It would be manifestly unfair to the Claimant to allow this Stipulation to stand, given its outsized impact on her rights to a fair hearing to redress the wrongs she asserts against the non-debtor parties.

## NOTICE

32.     Notice of this Motion shall be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Reorganized Debtor; and (c) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Claimant respectfully submits that no further notice is necessary.

## NO PRIOR REQUEST

33.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these Chapter 11 Cases.

[Remainder of page intentionally left blank]

**WHEREFORE**, based upon the foregoing, the Claimant, Dr. Rinku Patel, respectfully requests entry of an order (a) rescinding the Stipulation or, in the alternative, (b) either setting aside the order approving the Stipulation or in the alternative, modifying the order to preserve Dr. Patel's right to pursue claims against the non-debtor parties in other forums (along with any other relief as may be just and proper).

Dated: September 24, 2025        **GOLDSTEIN & MCCLINTOCK LLLP**

By: /s/ *Maria Aprile Sawczuk*
Maria Aprile Sawczuk (DE Bar No. 3320)
Aaron R. Harburg (DE Bar No. 7207)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com
aaronh@goldmclaw.com

*Counsel for Dr. Rinku Patel*