## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| The Pet Apothecary, LLC,[1] | Case No. 24-11192 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 23, 2025, at 10:00 a.m. (Eastern Time)**<br>**Objection Deadline: October 8, 2025, at 4:00 p.m. (Eastern Time)** |
| | **Related Docket Nos. 146, 154** |

### OBJECTION TO DR. RINKU PATEL'S MOTION TO RESCIND SETTLEMENT AGREEMENT AND / OR MODIFY OR SET ASIDE ORDER APPROVING STIPULATION BY AND BETWEEN REORGANIZED DEBTORS AND DR. RINKU PATEL REGARDING PROOF OF CLAIM NO. 72

The Pet Apothecary, LLC, and its Affiliated Debtors (collectively, the "**Reorganized Debtors**"), by and through their undersigned counsel, as successors to the Debtors, hereby submit this objection (the "**Objection**") to *Dr. Rinku Patel's Motion to Rescind Settlement Agreement and / or Modify or Set Aside Order Approving Stipulation By and Between Reorganized Debtors and Dr. Rinku Patel Regarding Proof of Claim No. 72* [Docket No. 154] (the "**Motion**").[2]  In support of this Objection, the Reorganized Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

1.     By this Objection, the Reorganized Debtors request that the Court deny the Motion in full.  The Motion should not be approved because rescission or modification of a settlement

---

[1]     The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is The Pet Apothecary, LLC (6074). The address of the Reorganized Debtor's corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062. On May 2, 2025, the Court entered an order closing the chapter 11 cases of The Pet Apothecary, LLC's debtor affiliates (collectively, the "**Affiliated Debtors**"). A complete list of the Affiliated Debtors, along with their federal tax identification numbers, is available through the Court's CM/ECF electronic case filing system (https://ecf.deb.uscourts.gov/) under Case No. 24-11192, at Docket No. 4.

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

order based on unilateral mistake is an extraordinary measure and the factors for unilateral mistake are not met.  In addition, Federal Rule of Civil Procedure 60(b) ("**Rule 60(b)**") does not support equitable relief, nor would it be manifestly unjust to enforce the Claim Order (defined below) as it is written.

2.        Contrary to Dr. Rinku Patel's ("**Dr. Patel**" or the "**Claimant**") claims, this is not a case of mistake or manifest injustice.  The Claimant is having second thoughts about an agreement she voluntarily entered into with the advice of experienced counsel and is asking the Court to set aside well-settled law favoring contract enforcement, in order to relieve her of the consequences of her own decision.  This effort does not meet the high bar required to unwind a stipulation under the doctrine of unilateral mistake, impose equitable relief under Rule 60(b), or modify the Claim Order under the principle of manifest injustice.

3.        Further, reversing Dr. Patel's decision to enter the settlement will cause direct harm to the Reorganized Debtors resulting from the assertion of indemnification claims by the individual defendants in the District Court Action; a perverse result in light of the discharge of Dr. Patel's pre-petition claim.

## **BACKGROUND**

4.        On June 7, 2024 (the "**Petition Date**"), OptioRx and its affiliates commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Chapter 11 Cases were jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

5.        On June 26, 2024, the Court entered the *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing*

*Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9)*

*of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No.

104] (the "**Bar Date Order**").  Pursuant to the Bar Date Order, the deadline for creditors to file

proofs of claim was August 7, 2024, at 5:00 p.m. (Eastern Time) (the "**Bar Date**").

6.        As the Court is aware, on July 22, 2024, after the Chapter 11 Cases were filed and

with full knowledge of the Chapter 11 Cases, Dr. Patel and her counsel filed an action in Cook

County, Illinois which was subsequently removed to the United States District Court for the

Northern District of Illinois (the "**District Court Action**") against the Debtors, in violation of the

automatic stay.

7.        On July 30, 2024, the Debtors filed a motion for enforcement of the automatic stay

and for sanctions against Dr. Patel for knowingly violating the automatic stay, which this Court

granted. [Docket No. 406].  Dr. Patel subsequently paid $21,569.00 in sanctions. [Docket No. 419].

8.        On August 2, 2024, Dr. Patel filed an unsecured claim in the chapter 11 case of

OptioRx in the amount of $1,527,074.55 allegedly arising from unpaid severance, a 2023 annual

bonus, and legal fees, of which Dr. Patel asserted $15,150.00 was entitled to priority under section

507(a)(4) of the Bankruptcy Code ("**Claim No. 72**").

9.        On October 17, 2024, the Debtors filed the *Second Amended Joint Chapter 11 Plan*

*of Reorganization of OptioRx, LLC, et al.* [Docket No. 480] (the "**Plan**") and on the same date,

the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Debtors'*

*Second Amended Joint Chapter 11 Plan of Reorganization of OptioRx, LLC, et al.* [Docket No.

484].  Pursuant to the Plan, Dr. Patel was specifically excluded from Debtors' Released Parties.

(*See* Plan, Art. 7, § 7.02; Plan, Art I § 1.01 wwwww).

10.     On March 14, 2025, the Reorganized Debtors filed the *Debtors' Third (Substantive) Omnibus Objection to Claims Pursuant to Bankruptcy Code Section 502, Bankruptcy Rule 3007, and Local Rule 3007-1* [Docket No. 776] (the "**Claim Objection**"), in which the Reorganized Debtors objected to Claim No. 72.

11.     On April 4, 2025, Dr. Patel filed *Dr. Rinku Patel's Opposition to Debtors' Third (Substantive) Omnibus Objection to Claims Pursuant to Bankruptcy Code Section 502, Bankruptcy Rule 3007, and Local Rule 3007-1* [Docket No. 844] (the "**Opposition**").

12.     On May 2, 2025, the Court entered the *Order and Final Decree Closing Certain of the Chapter 11 Cases* [Docket No. 870] (the "**Case Closing Order**").  Pursuant to the Case Closing Order, *inter alia*, the chapter 11 case of The Pet Apothecary LLC, Case No. 24-11192 (TMH) (the "**Remaining Case**") remained open, each of the Debtors' other Chapter 11 Cases were closed, and all matters, including any claim objections with respect to claims against the Debtors, are to be filed, administered, and adjudicated in the Remaining Case.

13.     Following the filing of the Opposition, counsel for both parties engaged in settlement negotiations aimed not only at resolving the asserted priority portion of Claim No. 72, but at reaching a global resolution of the entirety of Dr. Patel's claims. As part of those negotiations, the parties exchanged several draft settlement agreements and provided comments on multiple iterations.  Notably, the draft agreements each contained a broad release, the inclusion of which was required by the Reorganized Debtors for entry into the settlement.  The email correspondence and redlined drafts are attached as **Exhibits 1 through 4**.[3]

---

[3]     Although Fed. R. Evid. 408 bars the admission of evidence related to settlement discussions, "[i]t is well established that this rule does not exclude evidence related to a settlement when it is offered for the purposes of interpreting or enforcing the settlement." *Marshak v. Vidov (In re Vidov)*, 2014 WL 3766721, at *6 (9th Cir. BAP July 31, 2014), *citing* Advisory Committee Notes accompanying 2006 amendments to Evidence Rule 408. *See also Stainton v. Tarantino*, 637 F. Supp. 1051, 1081–82 (E.D. Pa. 1986) (admitting a letter from settlement

14.    On August 6, 2025, the Reorganized Debtors filed a Certification of Counsel [Docket No. 145]. This Certification of Counsel, which had been previously reviewed by counsel for Dr. Patel, included the negotiated and agreed upon stipulation between the parties attached as Exhibit A to the Proposed Order (the "**Stipulation**"). The Stipulation consisted of a negotiated global resolution of all claims between the parties and, among others, their affiliates and representatives in which the Reogaranized Debtors made meaningful concessions, including (i) granting Dr. Patel a broad global release of all claims, including claims for negligence, (ii) Claim No. 72, allowing the entire $1,527,074.55 claim in full and (iii) $13,000 paid as a Class 4 Other Priority Claim, the receipt of which was confirmed by Counsel for Dr. Patel.

15.    On August 6, 2025, the Court entered the *Order Approving Stipulation by and between Reorganized Debtors and Dr. Rinku Patel Regarding Proof of Claim No. 72* [Docket No. 146], which is attached hereto as **Exhibit 5** (the "**Claim Order**").

16.    Thereafter, the Reorganized Debtors paid Dr. Patel $13,000 on account of the priority portion of Claim No. 72.

17.    On September 24, 2025, Dr. Patel filed the Motion.

## OBJECTION

### I.    Delaware Law Favors Strict Enforcement of Settlement Agreements.

18.    Delaware is a "contractarian" state. "[Its] law recognizes that parties have a right to enter into good and bad contracts and enforces both." *REM OA Holdings, LLC v. N. Gold Holdings, LLC*, No. 2022-0582-LWW, 2023 WL 6143042, at 19 (Del. Ch. Sept. 20, 2023). The presumption that parties are bound by the agreements they sign is especially strong when they are

---

negotiations into evidence because it was offered in good faith and not to prove the validity or invalidity of a claim).

sophisticated, represented by counsel, and engaged in arm's-length negotiations, as was the case here. *See id.; see also Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, No. 2017-0017-NAC, 2023 WL 4571932, at *7 (Del. Ch. July 17, 2023) (It is not the "job of a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not. Even if the bargain . . . ends up a bad deal for one or both parties, the court's role is to enforce the agreement as written.").

19.       Here, the Stipulation was drafted, negotiated between the parties represented by counsel, and submitted to and approved by this Court. Both Dr. Patel and her counsel are sophisticated parties, further underscoring why Court intervention would be inappropriate and contrary to established policy. Claimant is a highly experienced Doctor of Pharmacy with over twenty years of experience in the pharmaceutical industry and is the former Chief Executive Officer of OptioRx and has experience participating and settling litigation. Her counsel has practiced before this Court for decades and has been involved in these Chapter 11 Cases since at least August of 2024, when they assisted Dr. Patel in connection with the Debtors' motion to enforce the automatic stay (for which Dr. Patel was ultimately sanctioned by this Court). Indeed, given this previous issue – which arose out of Dr. Patel's claims in the District Court Action – she and her counsel should have been on notice regarding, and more sensitive to, the potential impact of an order in this Court on the District Court Action and Dr. Patel's claims pending therein.

20.       Despite their sophistication and deep familiarity with these proceedings and, of course, the District Court Action, Claimant and her counsel now seek to undo an unambiguous and binding agreement by asserting that Dr. Patel did not understand the scope of the release language. But as courts have made clear, misunderstanding the legal consequences of a release

does not invalidate the agreement. *See REM OA Holdings, LLC*, 2023 WL 6143042, at 22 (holding that a party is not excused from its obligations because it "was mistaken as to the legal effect of his contract."). The Reorganized Debtors should not face adverse consequences from Dr. Patel's unilateral mistake.

21.     Allowing the Claimant to unravel the Stipulation would directly undercut Delaware's policy of strict contract enforcement and would invite the very delay, forum shopping and ongoing cost the Stipulation was designed to avoid.

## II.     Rescission Under the Doctrine of Unilateral Mistake is Not Justified.

22.     Claimant contends that the Stipulation should be set aside on the basis of unilateral mistake. As Claimant admits in her own Motion, the remedy of rescission of a contract due to unilateral mistake is "extraordinary." *See* D.I. 154 ¶ 271; *see also FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 861 (Del. Ch.), aff'd sub nom. *A & R Logistics Holdings, Inc. v. FdG Logistics LLC*, 148 A.3d 1171 (Del. 2016). Under Delaware law, "[a]voidance of a release because of unilateral mistake requires [the party seeking avoidance] to demonstrate 1) unconscionability, 2) mistake related to the consideration received, 3) that the mistake would occur even in the exercise of normal care, and 4) the defending party may be returned to the *status quo ante* if the release is avoided." *Obaitan v. State Farm*, No. C.A. 14318, 1997 WL 208959, at 3 (Del. Ch. Apr. 23, 1997). Further, a unilateral mistake must be proven by clear and convincing evidence. *Bryant v. Way*, No. CIV.A. 11C-01-164RRC, 2012 WL 1415529, at *13 (Del. Super. Ct. Apr. 17, 2012).

23.     As set forth below, the undisputed record supports that the Motion should be denied on all bases, including as to the argument of unilateral mistake.

> **a.     *The Stipulation is not unconscionable.***

24.     The Claimant's assertion that enforcement of the Stipulation would be unconscionable is not substantiated by Delaware law.  A contract is unconscionable if "no man in his senses and not under delusion would make [it]" and "no honest or fair man would accept [it]." *Tulowitzki v. Atl. Richfield Co.,* 396 A.2d 956, 960 (Del.1978) (internal quotations omitted).  Delaware courts require more than superior bargaining power.  A contract must be so one-sided and oppressive that no reasonable party would agree to it, and the party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability.  *See Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*, No. C.A. 06-297-GMS, 2009 WL 1033651, at *8 (D. Del. Apr. 16, 2009); *see also Romero v. Allstate Ins. Co.*, 158 F. Supp. 3d 369, 380 (E.D. Pa. 2016).  That is a high bar—and it is not met here.

25.     The Stipulation was negotiated at arm's-length with both parties represented by experienced counsel.  There is no evidence of unequal bargaining power, coercion, or hidden terms.  Importantly, the release language now challenged was included from the earliest drafts and remained unchanged through every stage of negotiation.[4]  The Claimant's repeated assertions that Debtors' counsel added or expanded the release language after initial drafts are incorrect, contradicted by the unaltered text of the release provision at issue in every version of the agreement exchanged:

> Upon the Stipulation Effective Date, except for the obligations set forth in this Stipulation, Dr. Patel, on behalf of

---

[4]     Claimant's counsel proposed adding language reserving rights as to the general unsecured portion of Claim No. 72.  However, that proposed change did not concern the release language at issue, and the full release paragraph in the final Claim Order remained identical to the version included in the Reorganized Debtors' initial draft.

herself and all parties claiming by, through or under her, hereby release and forever discharge the Reorganized Debtors, the Reorganized Debtors' estates (including any and all predecessors and affiliates), and each of their respective present and former shareholders and its and their respective officers, directors, partners, members, managers, employees, agents, attorneys, and shareholders, and their successors, assigns and other representatives from any and all claims, controversies, actions, causes of action (including, without limitation, all claims, controversies, actions and causes of action arising under state or federal law including chapter 5 of the Bankruptcy Code or regulations), demands, debts, damages, losses, costs, attorneys' fees, expenses, monies due on account, obligations, judgments and liabilities of any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise, reported or unreported, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether or not now or heretofore known, suspected, or claimed.

Docket No. 146 ¶ 7.

26.     While not an attorney herself, Dr. Patel had experienced attorneys negotiating on her behalf who have practiced in this Court for years.   Moreover, Dr. Patel's counsel that negotiated the Stipulation was fully aware of Dr. Patel's pending litigation in the United States District Court for the Northern District of Illinois, as she was previously involved in the stay relief matters before this Court, for which Dr. Patel was ultimately sanctioned.  If the Claimant or her counsel truly believed the terms of the mutual release to be unacceptable, they could have proposed modifications—but they did not.  That silence (and eventual acceptance) is inconsistent with a claim of unconscionability.

27.     In addition, Claimant's hindsight argument – that she would not have agreed to waive claims allegedly worth over $1 million in exchange for a $13,000 claim allowance – misrepresents the actual terms of the Stipulation, neglects the broad general release that Dr. Patel received and, even if taken at face value, does not render the Stipulation unconscionable. D.I. 154, Ex. A ¶ 5.  As described *supra*, Dr. Patel received a broad release of any and all claims that the

- 9 -

Debtors, Reorganized Debtors and anyone claiming through them had or may have, and the total allowed claim amounted to $1,527,074.55, of which $15,150.00 was asserted as a priority claim. The Stipulation was intended to function as a global settlement, under which the claim was allowed in full, despite Reorganized Debtors' objections to the substance of the claim.  As part of the settlement, the asserted priority portion was reduced to $13,000 and paid immediately as a Class 4 Other Priority Claim.  Moreover, the Reorganized Debtors explicitly allowed the entire balance of Claim No. 72 as a Class 6 general unsecured claim.

28.    Despite Claimant's mischaracterization of the Stipulation, a claim of unconscionability is unsubstantiated, because "[a] dispute over price alone—even a substantial one—is not grounds for finding an agreement between sophisticated parties to be unconscionable." *FdG Logistics LLC v. A&R Logistics Holdings, Inc*., 131 A.3d 842, 862 (Del. Ch. 2016).  Further, "[t]here is a significant distinction between an unconscionable contract and a bad bargain." *Obaitan*, 1997 WL 208959, at 3 (holding that although a court may believe that a higher settlement offer is warranted, "this does not make the offer or its acceptance irrational, much less unreasonable.")

29.    Claimant's related assertion—that the waiver solely benefits non-debtor parties— is also without merit.  The Stipulation clearly benefitted the Claimant by providing her a release that was otherwise excluded under the Plan, allowing her to avoid the significant risks, delays, and costs associated with litigation, while still securing full allowance of her $1,527,074.55 claim and ensuring a portion would be paid promptly and in priority.  The Stipulation likewise benefits the Reorganized Debtors by eliminating any exposure to indemnification claims by such individuals. This negotiated balance supports enforcement of the Stipulation, not its rescission.

4918-8674-2381, v. 10

### b.    *The mistake does not relate to the substance of the consideration.*

30.    To satisfy the second prong of the test for unilateral mistake, Claimant must show that her alleged mistake relates to the substance of the consideration – for example, mistakenly reaching a settlement number based on a computational error.    *See Am. Bottling Co. v. Crescent/Mach I Partners, L.P.*, No. CIV.A. 09C-02-134WCC, 2009 WL 3290729, at *4 (Del. Super. Ct. Sept. 30, 2009 (A mistake relating to the monetary calculation that forms the basis of a settlement agreement is a mistake that relates to the substance of the consideration).

31.    The Claimant's purported mistake is not about the numeric settlement figure – Debtors agreed to allow the asserted claim in full in consideration of the settlement; it is about the scope of the releases she approved.    Mistakes about release terms do not implicate the consideration prong. *See Obaitan*, 1997 WL 208959, at 3 (holding that a mistake in understanding the terms of a release does not go to the consideration, but rather to the party's understanding of the agreement she signed).

32.    Therefore, Claimant's argument for rescission also fails under this prong of the conjunctive elements of the test for unilateral mistake.

### c.    *Claimant failed to exercise ordinary care.*

33.    The Claimant cannot credibly argue she exercised ordinary care yet overlooked a clear waiver of claims in a relatively simply drafted and short form of mutual release.  She was represented by experienced counsel, including attorneys practicing in this Court for decades.

34.    Indeed, in her Motion, Claimant expressly acknowledges that paragraph 7 of the Stipulation contains "expansive language" clearly listing released claims and third-party individuals, yet then contends she only believed she was resolving her claim in this Court. That self-contradiction underscores the absence of reasonable care.  D.I. 154 ¶ 29.

- 11 -

35.     The release at issue contains standard language of the kind that has been repeatedly approved by this Court and others, and it is reasonable to expect that competent counsel would understand the implications of this release provision and its effect.  Also, Claimant revealed that in addition to the attorneys in this proceeding, she retained other counsel in connection with the claims she was pursuing against non-debtors, but she "did not contemplate having [the other team of attorneys] review a settlement she believed solely involved her claim against the Debtors."  D.I. 154 ¶ 22(c).  Notwithstanding, both litigation and bankruptcy counsel for Dr. Patel were fully aware that Dr. Patel's claims were against both the Debtors and non-debtors because they were familiar with the District Court Action commenced during these Chapter 11 Cases and the sanctions that Dr. Patel suffered as a result. *See* Docket No. 406.

36.     It is well-settled that in our system of representative litigation, a "party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962) (internal citations omitted).  A represented party cannot "avoid the consequences of the acts or omissions of [their] freely selected agent. *Id.*  Accordingly, Claimant's assertion that her failure to understand the effect of a standard release provision warrants relief, simply because she is not an attorney, is unavailing.

37.     To the extent Claimant's argument rests on the notion that her counsel failed to identify or adequately explain the terms in the Stipulation, her remedy lies against her counsel— not in judicial unwinding of the agreement.  As the Supreme Court explained: "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962).

- 12 -

38.     Moreover, Claimant's contention that she is entitled to rescission or modification of the Stipulation since she did not understand the releases is misguided.

> ### d.     The parties cannot truly be placed in the status quo.

39.     The fourth prong requires that the parties be capable of being restored to their pre-contract status.  This is the sole prong of the unilateral mistake doctrine that can ostensibly be met. However, the Reorganized Debtors have already paid the settlement amount to Dr. Patel, and the estate has relied on the finality of that payment and the global releases it bargained for to end all litigation with Dr. Patel for the estates and related parties.  In light of performance and reliance on such performance, rescission or modification of the Stipulation would prejudice the Reorganized Debtors, impair the integrity of the settlement process, and undermine finality.

## III.   Equitable Relief Is Not Warranted Pursuant to Fed. R. Civ. P. 60(b).

40.     Claimant is not entitled to rescission, modification, or setting aside of the Claim Order pursuant to the equitable powers of Section 105(a) of the Bankruptcy Code and Rule 60(b), incorporated into Bankruptcy Rule 9024.

41.     Rule 60(b)(1) allows relief from a final judgment, order, or proceeding for "mistake**,** inadvertence**,** surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1).  The Claimant broadly alleges that she is entitled to equitable relief pursuant to this rule, yet fails to identify the grounds under which she qualifies for such relief.

42.     In asserting what is presumably a "mistake" argument, the Claimant cites to a Sixth Circuit case for the proposition that a stipulation is unenforceable if the parties never agreed to its terms. *See In re Nicholson Indus., Inc.*, 73 B.R. 266, 268-69 (Bankr. N.D. Ohio 1987).  However, that case turned on ambiguous negotiations and inadequate evidence of a meeting of the minds, with the court focusing its analysis on the correspondence between the contracting parties.  The

- 13 -

case dictates that an evaluation of the merits of a Rule 60(b)(1) "mistake" defense is a fact-based determination.

43.    Here, aside from an affidavit from Dr. Patel attesting that "[a]t no point did [she] agree to a general release of all claims in all forums against any non-debtor parties[,]" Claimant has failed to present any evidence or facts indicating that there was a misunderstanding between the parties or miscommunication regarding the contents of the Stipulation or no meeting of the minds. D.I. 154, Ex. A ¶ 5. By all accounts, Dr. Patel's dispute lies with her counsel, and not with the Reorganized Debtors or their related parties.

44.    Next, Claimant loosely presents an "excusable neglect" argument under Rule 60(b)(1), asserting that in weighing the merits of this defense, "Courts should take into account factors such as prejudice to the debtor, any potential impact on judicial proceedings, the reason for the inaction or omission, and the good faith of the movant." D.I. 154 ¶ 26; *see also Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 113 S. Ct. 1489, 1498 (1993). *Pioneer*, however, addresses excusable neglect as it relates to missed deadlines—not misinterpretation of binding contract terms. *See id.* A more accurate listing of the *Pioneer* excusable neglect factors, reflecting their emphasis on timeliness, are "the danger of prejudice to the debtor, the length of the *delay* and its potential impact on judicial proceedings, the reason for the *delay*, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *In re Energy Future Holdings Corp.*, 619 B.R. 99, 110 (Bankr. D. Del. 2020) (emphasis added). Moreover, because Claimant contends that she misunderstood the terms of the Stipulation and not that there was a timeliness issue, her "excusable neglect" argument is misguided.

IV.     **It is Not Manifestly Unjust to Enforce the Stipulation.**

45.     Plaintiff asserts that if the Court is not inclined to rescind the Stipulation or set it aside, it should modify the Claim Order to prevent manifest injustice. D.I. 154 ¶ 31.   It is noteworthy that the cases the Claimant cites in support of manifest injustice consistently conclude that stipulations should be enforced, not rescinded or modified. *See Chem. Leamen Tank Lines, Inc. v. Aetna Cas. & Sur.*, 71 F. Supp. 2d 394, 397-99 (D. N.J. 1999).  The Third Circuit recognized that "'[a]llowing parties easily to set aside or modify stipulations . . . wast[es] judicial resources and undermin[es] future confidence in such agreements.'"); *see also In re Forde*, 507 B.R. 509, 520 (Bankr. S.D.N.Y. 2014) (emphasizing that "if substantial evidence [of a party's mistake] were all that was required to disregard [a stipulation], the purpose of stipulations would be severely undercut[.]").

46.     The Third Circuit weighs four factors to determine whether refusing to alter or modify a stipulation would constitute manifest injustice: 1) the effect of the stipulation on the party seeking to withdraw the stipulation; 2) the effect on the other parties to the litigation; 3) the occurrence of intervening events since the parties agreed to the stipulation; and 4) whether evidence contrary to the stipulation is substantial. *Waldorf v. Shuta,* 142 F.3d 601, 617-18 (3d Cir. 1998).

47.     An examination of these four factors reveals that enforcement of the Stipulation as it is drafted does not impose manifest injustice.

48.     The first *Waldorf* factor—whether the Stipulation unfairly prejudices the moving party—strongly favors enforcement.  Claimant entered into the Stipulation voluntarily, with full access to experienced counsel.  The Claimant and her counsel reviewed and negotiated the terms of the Stipulation, exchanging several drafts of the Stipulation, during which time she did not

- 15 -

object to or propose to change the third-party release language.  Instead, Claimant agreed to those terms knowingly and deliberately.  The record shows that the agreement was the product of negotiation, reflection, and strategic compromise.  Claimant made a calculated decision, and the fact that she now regrets it does not entitle her to relief.

49.     The second factor—the effect on the non-moving party—also weighs against modification.  The Reorganized Debtors have already performed under the Stipulation by granting Dr. Patel a full release and making payment to Dr. Patel, and have relied on the finality of the Claim Order in continuing to resolve other creditor claims.  If this Court were to reopen or revise the Stipulation based on Claimant's post-settlement dissatisfaction, it would impose material costs and delay on the Reorganized Debtors, subject the Reorganized Debtors to potential ongoing discovery requests in the District Court Action, interfere with estate administration, and subject the Reorganized Debtors to indemnity and potential insurance coverage issues.  In addition, the Stipulation was never presented to the Court as provisional or conditional.  It was final and binding, approved by this Court, and acted upon.  Undoing it now would significantly prejudice the Reorganized Debtors by injecting uncertainty into the settlement process and encouraging other creditors to revisit final orders.

50.     The third *Waldorf* factor addresses whether intervening events have occurred since the agreement that might justify revisiting it.  Here, the only post-Stipulation development is the Reorganized Debtors' performance of their obligations under the agreement.  There are no new issues that were not present when the parties entered the agreement to warrant revisiting the Stipulation.  Indeed, Claimant does not argue otherwise. Her Motion is premised not on new

- 16 -

events, but on a retroactive claim of misunderstanding—a claim that is both unsupported by evidence and refuted by the record of negotiations.

51.    Finally, the fourth *Waldorf* factor—whether there is substantial evidence contrary to the stipulation—weighs overwhelmingly against Claimant.  She presents no contemporaneous documents, no emails, no redlines, no affidavits from counsel, and no communications that suggest a misunderstanding of the Stipulation's terms at the time of execution.  Instead, Claimant offers only conclusory statements made after the fact, asserting she did not understand the release.  But bare assertions—especially when contradicted by the plain language of the agreement and the unchanged nature of its terms—do not constitute "substantial evidence."  In fact, the record disproves Claimant's position.  The release language is clear and not convoluted or lengthy, broad, and typical of settlement stipulations in bankruptcy cases.  As noted *supra*, the release language at issue was never altered from the version originally proposed.  There were no last-minute insertions or expansions.  And yet Claimant and her counsel—experienced, sophisticated counsel—chose not to object or seek changes.  That silence confirms informed consent as well as her receipt and retention of the payment of the priority claim amount.

52.    Here, none of the four *Waldorf* factors supports modification of the Stipulation.  The Claimant's Motion offers no compelling reason—legal, factual, or equitable—to override the bargain she struck.  To grant relief under the guise of "manifest injustice" would set a dangerous precedent, opening the door for other litigants to disavow settlements they later come to regret.

53.    Because the Stipulation was voluntarily agreed to, consistently negotiated, and fully performed—and because the *Waldorf* factors provide no support for Claimant's position—there is

- 17 -

no basis to disturb the Claim Order.  The Court should enforce the Stipulation as written and deny any request for modification based on alleged manifest injustice.

## **RESERVATION OF RIGHTS**

54.     The Reorganized Debtors expressly reserve all rights to supplement, amend, or modify this Objection.  This includes, but is not limited to, the right to conduct discovery pursuant to the applicable provisions of the Bankruptcy Rules and to introduce new evidence or witnesses as permitted by applicable rules and court orders.  Nothing herein shall be construed as a waiver of any rights under the rules of civil procedure or relevant case law.

## **CONCLUSION**

55.     The Claimant has not carried her burden under the doctrine of unilateral mistake, Rule 60(b), or the manifest injustice standard.  The Stipulation was the product of rigorous negotiation, careful counsel, and court approval.  Enforcing it is fully consistent with Delaware contract law and the integrity of settlement agreements.

**WHEREFORE**, for the reasons set forth in this Objection, the Reorganized Debtors respectfully request that the Court deny the Motion in its entirety and grant any other relief as may be just and proper.

Dated: October 8, 2025
        Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
       olivere@chipmanbrown.com
       maser@chipmanbrown.com

*Counsel for the Reorganized Debtors*