# **Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**RINKU PATEL, PHARMD,**
        Plaintiff,

v.

**CBC PHARMA HOLDCO LLC**, **PHARMACY MANAGEMENT LLC**, **ASHOK NAYYAR**, an individual, **JEFFREY KELLY**, an individual, **JONATHAN TUNIS**, an individual, **BARRY BEST**, an individual,
        Defendants.

Case No.24-cv-8110

Hon. Sara L. Ellis

**PLAINTIFF'S MOTION TO CLARIFY BANKRUPCY STIPULATION AND TO EXTEND THE DEADLINE FOR FACT DISCOVERY CLOSE**

    Plaintiff, Rinku Patel ("Plaintiff"), by and through her attorneys, The Prinz Law Firm, P.C., respectfully moves this Court to (a) confirm that Plaintiff's claims have not been released by the bankruptcy stipulation described below, and (b) extend the deadline for fact discovery close from October 3, 2025 to February 3, 2026. In support thereof, states as follows:

    **I.**    **FACTUAL BACKGROUND**

    1.    On July 22, 2024, Plaintiff filed a nine (9) count complaint in the Circuit Court of Cook County, Illinois, against her former employer, OptioRx, LLC and the Defendants in this matter stating claims for violations of the Illinois Wage Payment and Collection Act ("IWPCA") (Counts I, II, and III), violations of the Illinois Whistleblower Act ("IWA") (Count IV), Common Law Retaliatory Discharge (Count V), and Breach of Contract (Counts VI, VII, VIII, and IX).

    2.    On July 29, 2024, OptioRx filed a Notice of Suggestion of Bankruptcy in the Circuit Court of Cook County. OptioRx had filed for bankruptcy in the United States Bankruptcy Court for

1

the District of Delaware[1] (the "Bankruptcy Matter"). *See* Affidavit of Rinku Patel, PharmD ("Dr. Patel Aff."), ¶ 3

3. Shortly thereafter, Plaintiff hired bankruptcy counsel, Maria Aprile Sawczuk, an attorney with Goldstein & McClintock LLP, to represent Plaintiff in filing a claim in the Bankruptcy Matter to preserve Plaintiff's claim against OptioRx. On August 2, 2024, Ms. Sawczuk filed a general unsecured claim on Plaintiff's behalf in the Bankruptcy Matter in the amount of $1,527,074.55, of which Plaintiff asserted $15,150.00 was entitled to priority under section 507(a)(4) of the United States Bankruptcy Code. ("Claim No. 72"). *Id.* ¶ 4

4. On August 14, 2024, Plaintiff filed her First Amended Complaint in the Circuit Court of Cook County removing OptioRx and stating claims against Defendants.

5. On September 5, 2024, Defendants Pharmacy Management LLC, Ashok Nayyar, Jeffrey Kelly, Jonathan Tunis and Barry Best ("Defendants"), removed this case from the Circuit Court of Cook County, Illinois to the District Court for the Northern District of Illinois. *See* Dkt. No. 1.

6. On October 22, 2024, Plaintiff filed her Second Amended Complaint in this Court stating claims against Defendants for violations of the IWPCA, violations of the IWA, Common Law Retaliatory Discharge, and Breach of Contract. *See* Dkt. No. 19.

7. On April 14, 2025, this Court issued an Order setting the fact discovery deadline for October 3, 2025. *See* Dkt. No. 39.

8. On May 23, 2025, both Parties issued discovery requests including requests for production of documents and interrogatories. *See* Affidavit of Kristen Prinz ("Prinz Aff."), ¶ 2.

---

[1] The matter was initially captioned *In re Optio Rx, LLC*, Case No. 24-11188 (TMH) (Bankr. D. Del.) but was since consolidated and captioned, *In re: The Pet Apothecary LLC*, Case No. 24-11192 (TMH) (Bankr. D. Del.).

9.  In June 2025, both Parties provided initial responses to the discovery requests. *See Id.* ¶ 3.

10. In addition to providing initial responses, on June 23, 2025, Defendants indicated Defendants would supplement their responses with additional document production once the Court entered a protective order and would conduct an additional document search after the Parties conferred on appropriate ESI terms. *See id.* ¶ 4.

11. On July 2, 2025, the Court granted the Parties' motion for entry of an agreed protective order and agreed upon ESI protocol. *See* Dkt. No. 58. On August 15, 2025, the Parties filed a confidentiality order and an order setting ESI protocol. *See* Dkt. Nos. 60, 62.

12. On August 1, 2025, Plaintiff sent Defendants a discovery deficiency letter pursuant to Federal Rule 37, outlining the deficiencies in their discovery responses, and requested a response by August 8, 2025. *See* Prinz Aff. ¶ 5.

13. On August 5, 2025, Plaintiff's bankruptcy counsel, Ms. Sawczuk, forwarded to Plaintiff communications between Ms. Sawczuk and OptioRx's bankruptcy counsel that indicated that the Bankruptcy Matter was settling Plaintiff's priority claim against OptioRx for $15,000. *See* Dr. Patel Aff. ¶ 5. Counsel for OptioRx prepared a stipulation ("Bankruptcy Stipulation"). *Id*. Plaintiff never received or reviewed the Bankruptcy Stipulation prior to its entry. *Id*. ¶ 6. Plaintiff believed that the Bankruptcy Stipulation only released Claim No. 72 against the debtor, OptioRx, based upon the email communication between Ms. Sawczuk and OptioRx's bankruptcy counsel. *Id.* ¶ 7. The debtor, OptioRx, is not a party to this matter before this Court.

14. On August 7, 2025, the Parties in this matter held a telephonic meet and confer to discuss potential ESI terms. Pursuant to this phone call, Plaintiff sent a list of proposed ESI search terms on August 13, 2025 for Defendants' review and input. *See* Prinz Aff. ¶ 6. Plaintiff's counsel

3

was not aware of the Bankruptcy Stipulation at that time.

15. On August 20, 2025, Plaintiff emailed Defendants requesting a status update regarding the proposed ESI search terms and Plaintiff's August 1, 2025, discovery deficiency letter. In this email, Plaintiff specifically mentioned growing concern regarding the upcoming October 3, 2025 fact discovery close deadline. *See* Prinz Aff. ¶ 7. After receiving no response, Plaintiff emailed Defendants again on August 22, 2025 and August 25, 2025 requesting an update regarding outstanding discovery issues. *See id*. ¶ 8. On August 26, 2025, Defendants sent Plaintiff's Counsel a copy of the Bankruptcy Stipulation. *See id*. ¶ 9.

16. Defendants allege the Bankruptcy Stipulation released Plaintiff's claims pending in this Court, and requested Plaintiff file a voluntary dismissal. *See id*. ¶ 10. Defendants assert that the Bankruptcy Stipulation extended to parties and claims not before the Bankruptcy Court.

17. Plaintiff disagrees with Defendants' position because Plaintiff did not agree to dismiss any of her claims in the pending lawsuit in this Court. *See* Prinz Aff. ¶ 11. Plaintiff believes Defendants intentionally pursued a broad release in the bankruptcy court without notifying the bankruptcy court of, or raising with Plaintiff's bankruptcy counsel, the claims pending before this Court. Plaintiff was not informed of the breadth of the Bankruptcy Stipulation prior to its filing and did not believe she was releasing any claims beyond those raised in the bankruptcy matter. *See* Dr. Patel Aff. ¶¶ 7-9.

18. Plaintiff had no prior knowledge or indication that the Bankruptcy Stipulation purported to release any claims beyond the Claim No. 72 against the debtor, OptioRx. She had no prior knowledge or indication the Bankruptcy Stipulation purported to release any claims against any non-debtors, or the Defendants in this matter, or the claims in this matter. She never intended or agreed to release the claims pending in this Court. *See id.*; *see also,* Prinz Aff. ¶¶ 11-12.

4

19. Counsel for Plaintiff in this matter was unaware of the Bankruptcy Stipulation until Defendants provided a copy on August 26, 2025. *See* Prinz Aff. ¶¶ 9, 11-12. Notably, the Order approving the Bankruptcy Stipulation is dated August 6, 2025. *See id.* ¶ 9.

20. On August 26, 2025, Plaintiff's counsel immediately contacted Plaintiff's bankruptcy counsel but received a notification that counsel was out of office and overseas. *See id.* ¶ 13.

21. On August 29, 2025, Plaintiff emailed Defendants again to request a status update on outstanding discovery. Defendants replied this same day stating they had no intent to engage in discovery due to the Bankruptcy Stipulation. *See id.* ¶ 1. Plaintiff's counsel responded and indicated that Plaintiff did not release her claims, asked Defendant's counsel whether their co-counsel in the bankruptcy matter had disclosed this matter to Plaintiff's bankruptcy counsel, and asked Defendants to provide authority supporting their claim of release. *See id.* ¶¶ 14-15.

22. The partner with whom Plaintiff's counsel had been communicating regarding this matter did not respond to Plaintiff's inquiry. *See id.* ¶ 16.

23. On September 2, 2025, Plaintiff's counsel spoke with Plaintiff's bankruptcy counsel and confirmed that the intent of the Bankruptcy Stipulation was to release only the debtor for Plaintiff's claims in the bankruptcy matter. *See* Prinz Aff. ¶ 17. Plaintiff's bankruptcy counsel further informed Plaintiff's counsel that counsel for the debtor, OptioRx, did not address the claims pending in this Court when such counsel drafted and presented the Bankruptcy Stipulation. *See id.*

24. On September 3, 2025, Defendants indicated they intend to file a motion requesting a status conference and a stay of discovery. *See id.* ¶ 18. Plaintiff responded stating she will be seeking an extension of discovery deadlines with the Court and indicated concern regarding Defendants' counsel's coordination with Defendants' bankruptcy co-counsel. Defendants denied

any coordination. *Id.* Defendants also indicated they would agree to an extension of discovery deadlines, subject to the Court's decision on their proposed stay of discovery. *Id.*

## II. LEGAL ARGUMENT

### A. Plaintiff Requests This Court Clarify that Plaintiff's Claims in This Matter Have Not Been Released by the Bankruptcy Stipulation.

25. Plaintiff did not authorize the release of the claims pending before this Court. And it is nonsensical for Plaintiff to have released her claims against the non-debtors named in this matter for a total sum of $13,000 given the value of her claims in the instant matter exceed seven figures. Disputes regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law. *Magallanes v. Ill. Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008) (*citing Sims-Madison v. Inland Paperboard and Packaging, Inc.,* 379 F.3d 445, 448 (7th Cir. 2004) (*citing Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000)). Under Illinois law, an attorney has no authority to settle a claim of the client absent the client's express authorization to do so. *Id*. An attorney's authority to agree to an out-of-court settlement will not be presumed, and the burden of proof rests on the party alleging authority to show that fact. *Id*.

26. Here, Plaintiff did not agree to release her claims in this matter against the non-debtors. *See* Patel Aff. ¶¶ 5-11. Notably, Plaintiff was not provided a copy of the Bankruptcy Stipulation until after it was filed. *Id.* ¶ 6. Even then, Plaintiff did not believe she was releasing any claims beyond the claims pending in the Bankruptcy Matter. *Id.* ¶ 7. Plaintiff's bankruptcy counsel did not intend to release Plaintiff's claims in this matter. In his email correspondence to Plaintiff's bankruptcy counsel, OptioRx's bankruptcy attorney indicated that the parties would be resolving Claim No. 72. *Id.* ¶ 5. Only the bankruptcy claim was mentioned in the bankruptcy counsels' correspondence. *Id*. Moreover, neither the OptioRx nor Plaintiff's bankruptcy counsel sought approval to release a wage claim from this Court or explicitly sought such a release from

6

the bankruptcy court.

27. As Defendants must concede, to release third party non-debtors, the release must be *consensual. See, e.g., Harrington v. Purdue Pharma L.P.,* 603 U.S. 204, 227–28 (2024) (holding that the "bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants."). As explained *supra*, Plaintiff did not consent to release any of her claims against any non-debtor in the instant matter. Thus, all of Plaintiff's claims must proceed before this Court and the Bankruptcy Stipulation is limited to only the debtor in the bankruptcy court.

28. Even if the Court finds that Plaintiff's bankruptcy counsel's signature on the bankruptcy stipulation is sufficient despite Plaintiff not agreeing to its terms, Plaintiff's case in this Court should still proceed.

29. Because of public policy concerns regarding protecting employees, Illinois courts have routinely explained that "IWPCA claims are not waivable." *Hoke v. Abrams*, No. 16 C 1174, 2017 U.S. Dist. LEXIS 5143, at *3–4 (N.D. Ill. Jan. 12, 2017) (*citing Lewis v. Giordano's Enters.*, 397 Ill. App. 3d 581 (1st Dist. 2009)); *O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1049-50 (N.D. Ill. 2002) ("[W]here a right is conferred for the benefit of the public at large, and the implementation of that right requires a limitation of the directly-involved individuals' freedom of contract, the argument in favor of nonwaivability is particularly compelling. The legislature is clearly stating that the larger public purposes served by such wage laws trump individual contract rights."); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 U.S. Dist. LEXIS 18370, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 9, 2001) ("the court concludes that it would be against the public policy of the IMWL and IWPCA to permit the parties to release their claims

7

thereunder"). Federal courts also disfavor and place strict scrutiny on wage claim releases. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306–07 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

30. Defendants have indicated reliance on *Graham* and *Washington*, both of which fail to support Defendants' position. *See Graham v. Village of Dolton*, 2023 IL App (1st) 211662-U, ¶ 7; *Washington v. Cook Cnty.*, No. 23-CV-1842, 2025 U.S. Dist. LEXIS 60516, at *20 (N.D. Ill. Mar. 31, 2025). Plaintiffs in those cases did not raise any issue of whether wage claims were *waivable*, and the courts did not address waiver. Simply, there is no holding that Defendants can apply to this matter. Instead, *Graham* supports Plaintiff's position. In *Graham*, an employee filed a lawsuit seeking unpaid wages under the IWPCA, entered into a settlement agreement for wages, and then sought to petition the circuit court for statutorily mandated attorneys' fees. *See Graham*, 2023 IL App (1st) 211662-U, ¶¶ 2, 6, 8. Despite the settlement agreement, in two appeals, the appellate court held that the IWPCA entitled the employee to attorneys' fees. *Id.* ¶¶ 8–9, 27. In awarding attorneys' fees, the appellate court cited *Thomas* for the proposition that "the purpose of the attorney-fee provision in the IWPCA is to 'protect[] exploited workers.'" *Id.* ¶ 24 (*citing Thomas v. Weatherguard Constr. Co.*, 2018 IL App (1st) 171238, ¶ 71)). In addition, the appellate court explained that the legislative intent was to have a broad application of the statute's definition of "wages." *Id.* ¶ 22. Contrary to Defendants' assertion, *Graham* supports Plaintiff's position as it is additional authority in which a court protected an employee's statutory rights under the IWPCA. And in *Washington*, there is only *one paragraph* referencing the IWPCA claim, indicating that the "claims have since settled," without additional context. *See Washington*, 2025 U.S. Dist. LEXIS 60516, at *19. It is categorically unclear how *Washington* supports releasing wage claims through a stipulation in another forum involving a different entity and a different claim.

8

31. Moreover, it appears that in both *Graham* and *Washington*, the settlement agreements at issue were reached between employees and employers, the employers paid wages to the employees, and the employee provided notice to the court in which the claims were filed of the settlement. In other words, the *Washington* and *Graham* courts were aware that IWCPA claims had been filed. Here, the bankruptcy court was not presiding over Plaintiff's wage claims, may not be aware of the wage claims, and the Bankruptcy Stipulation does not reference this matter or the IWPCA. There is no enforceable release that can be applied to Plaintiff's IWPCA claims.

32. Defendants have asserted that Defendants seek to assert the Supremacy Clause, but that reliance is also misplaced. For instance, in *Wehmeier v. UNR Indus., Inc.*, 213 Ill. App. 3d 1095, 1096 (4th Dist. 1990), which Defense counsel shared with Plaintiff's counsel prior to this filing, the court invalidated state court enforcement orders that conflicted with a bankruptcy plan's express terms. But that case involved creditors who knowingly pursued judgments against debtors subject to the bankruptcy plan's restrictions. Here, by contrast, Plaintiff never knowingly agreed to release her claims in the bankruptcy court as (a) non-debtors and (b) claims not before the bankruptcy court. Plaintiff is not attempting to circumvent the bankruptcy process, but is seeking vindicate a statutory right against non-debtors that Illinois law deems non-waivable as to her wage claims in particular. Similarly, in another case that Defendants' counsel shared, *Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992), the Seventh Circuit enforced a plan provision barring post-judgment interest, which is an ancillary, discretionary entitlement. But here, Plaintiff's wage claims involve a substantive right grounded in public policy. Moreover, unlike the parties in *Ocasek*, who knowingly litigated within the limits of a confirmed plan, Plaintiff's claims here were released without her knowledge or consent.

33. Therefore, Plaintiff respectfully requests that this Court issue an Order confirming

9

that there has been no release of the claims pending before this Court and order Defendants to comply with discovery.

  **B.  Plaintiff Requests This Court Extend Discovery and Order Defendants to Comply With Outstanding Discovery Requests and Present for Depositions.**

  34.  The court may modify a scheduling order "for good cause." *See* FED. R. CIV. P. 16(b)(4). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

  20.  Here, Plaintiff has diligently pushed discovery forward. Plaintiff timely served discovery requests, met and conferred with Defendants via phone and letter regarding deficiencies, and persistently followed up requesting the supplemental information Defendants indicated was forthcoming.

  21.  Once Defendants stated they would not be supplementing their discovery responses, Plaintiff filed this motion in a timely manner, well before the October 3, 2025, fact discovery close deadline.

  22.  This is the first time Plaintiff has sought an extension of the discovery deadline.

  23.  Further, throughout this process, Plaintiff has remained mindful of the Court's standing orders, which strongly encourage parties to exhaust meet and confer efforts before seeking judicial intervention.

  24.  Relying on both the Court's guidance and Defendants' representations that additional discovery would be forthcoming, Plaintiff believed that filing a motion to compel would have been premature.

  25.  This is further supported by Plaintiff's ongoing investigation into the Bankruptcy Stipulation that Defendants allege waives the claims at issue in this case.

26.     Accordingly, good cause exists to extend the fact discovery deadline.

27.     Pursuant to this Court's standing order, the Parties have met and conferred regarding this matter, and Plaintiff sent Defendants a copy of the instant motion on September 11, 2025, for review prior to the instant filing.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order (a) confirming that there has been no release of the claims pending before this Court, (b) extend the fact discovery close deadline from October 3, 2025 to April 3, 2026, and (c) award any other relief the Court may deem just and proper.

Dated: September 15, 2025

        Respectfully submitted,

        Rinku Patel, PharmD

        By:  /s/   Kristen Prinz
             One of Plaintiff's Attorneys

The Prinz Law Firm, P.C.
Kristen E. Prinz (kprinz@prinz-lawfirm.com)
Mary F. Charlton (mcharlton@prinz-lawfirm.com)
Hannah Savaso (hsavaso@prinz-lawfirm.com)
1 East Wacker Dr., Suite 1800
Chicago, IL 60601
P: (312) 212-4450
F: (312) 284-4822

11