**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RINKU PATEL, PHARMD,<br><br>    Plaintiff,<br><br>  v.<br><br>CBC PHARMA HOLDCO LLC,<br>PHARMACY MANAGEMENT LLC,<br>ASHOK NAYYAR, JEFFREY KELLY,<br>TUNIS, and BARRY BEST,<br><br>    Defendants. | Case No. 1:24-cv-8110<br><br>Hon. Sara L. Ellis |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR A STATUS CONFERENCE AND TO STAY DISCOVERY**

## TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 3 |
|     I.    The Parties. | 3 |
|     II.   Plaintiff's Agreement to a General Release of Claims in the Optio Rx Bankruptcy. | 4 |
|     III.  Defendants' Request that Plaintiff Dismiss Her Claims Based on the Stipulation. | 5 |
|     IV.  Plaintiff's Causes of Action. | 5 |
| ARGUMENT | 6 |
|     I.    Defendants Seek a Status Conference to Address the Effect of the Release | 6 |
|     II.   A Stay of Discovery is Warranted | 10 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bilal v. Wolf*,
  2007 U.S. Dist. LEXIS 41983 (N.D. Ill. June 6, 2007) ............................................................. 10

*In re Brentwood Outpatient, Ltd.*,
  43 F.3d 256 (6th Cir. 1994) ........................................................................................................ 8

*In re Conseco*,
  301 B.R. 525 (Bankr. N.D. Ill. 2003) .......................................................................................... 9

*Davis v. Cagbabuana*,
  2024 U.S. Dist. LEXIS 199850 (N.D. Ill. Nov. 4, 2024) ............................................................. 9

*Fair v. Int'l Flavors & Fragrances, Inc.*,
  905 F.2d 1114 (7th Cir. 1990) ..................................................................................................... 9

*In re Federal-Mogul Global Inc.*,
  684 F.3d 355 (3d Cir. 2012) ........................................................................................................ 8

*Forbus v. CF Remodeling, LLC*,
  2024 U.S. Dist. LEXIS 129079, at *4 n.1 (S.D. Ill. July 22, 2024); ........................................... 7

*In re Goerg*,
  844 F.2d 1562 (11th Cir. 1988) ................................................................................................... 8

*Graham v. Village of Dolton*,
  2023 Ill. App. Unpub. LEXIS 766 ............................................................................................... 7

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
  2015 WL 11255491 (N.D. Ill. Aug. 21, 2015) ........................................................................... 9

*Iannotti v. Wood Grp. Mustang*,
  2023 U.S. Dist. LEXIS 170811 (S.D. Ill. Sept. 25, 2023) ........................................................... 7

*Integrated Genomics, Inc. v. Kyrpides*,
  2010 WL 375672 (N.D. Ill. Jan. 26, 2010) .................................................................................. 7

*Jones v. City of Elkhart, Ind.*,
  737 F.3d 1107 (7th Cir. 2013) ................................................................................................... 10

*In re Kanter*,
  505 F.2d 228 (9th Cir. 1974) ....................................................................................................... 8

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
  2001 WL 1403007 (N.D. Ill. Nov. 9, 2001) ...................................................................7

*Lewis v. Giordano's Enters.*,
  397 Ill. App. 3d 581 (1st Dist. 2009) ............................................................................7

*People ex rel. Martin v. Lipkowitz*,
  225 Ill. App. 3d 980 (3d Dist. 1992) .............................................................................6

*Mueller Co. v. Dep't of Labor*,
  187 Ill. App. 3d 519 (4th Dist. 1989) ............................................................................6

*Nelson v. La Crosse Cnty. Dist. Atty. (State of Wisc.)*,
  301 F.3d 820 (7th Cir. 2002) ........................................................................................8

*Northfield Ins. Co. v. Kontos*,
  No. 1:23-cv-15164, ECF No. 56 (N.D. Ill. May 16, 2024) .........................................11

*O'Brien v. Encotech Constr. Servs.*,
  183 F. Supp. 2d 1047 (N.D. Ill. 2002) ..........................................................................7

*Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*,
  956 F.2d 152 (7th Cir. 1992) ........................................................................................8

*In re Optio Rx, LLC*,
  Case No. 24-11188 (TMH) (Bankr. D. Del.) ................................................................4

*In re: Pet Apothecary LLC*,
  Case No. 24-11192 (TMH) (Bankr. D. Del.) ................................................................1

*Piekarski v. Amedisys Ill., LLC*,
  2013 U.S. Dist. LEXIS 74871 (N.D. Ill. May 28, 2013) .............................................11

*Pierce v. Atchison, T. & S.F. Ry.*,
  65 F.3d 562 (7th Cir. 1995) ..........................................................................................9

*Regan v. Ross*,
  691 F.2d 81 (2d Cir. 1982) ............................................................................................8

*Rodriguez v. Ford Motor Co.*,
  2022 U.S. Dist. LEXIS 41641 (N.D. Ill. Mar. 9, 2022) .........................................10, 11

*Sadler v. Retail Props.*,
  2013 U.S. Dis. LEXIS 206567 (N.D. Ill. Sept. 27, 2013) ...........................................10

*Shanmugavelandy v. AbbVie*,
  No. 1:22-cv-2975, ECF No. 65 ...................................................................................11

*Matter of Specialty Equip. Cos., Inc.*,
    3 F.3d 1043 (7th Cir. 1993) ................................................................................................9

*Su v. Su*,
    2022 U.S. Dist. LEXIS 253154 (N.D. Ill. Apr. 11, 2022) ......................................................11

*Tradex Global Fund SPC Ltd. v. Solaris Opportunity Fund L.P.*,
    2025 WL 2144796 (1st Dist. July 29, 2025)..........................................................................8

*Vital Proteins, LLC v. Ancient Brands, LLC*,
    2023 U.S. Dist. LEXIS 155177 (N.D. Ill. Sept. 1, 2023) .....................................................10

*Washington v. Cook Cnty.*,
    2025 U.S. Dist. LEXIS 60516 (N.D. Ill. Mar. 31, 2025).........................................................7

*Wehmeier v. UNR Indus., Inc.*,
    213 Ill. App. 3d 1095 (4th Dist. 1990)....................................................................................8

*Wilmington Sav. Fund Soc'y, FSB v. Herzog*,
    2023 IL App. (1st) 221467-U (1st Dist. 2023) ......................................................................9

**Statutes**

Bankruptcy Act ...............................................................................................................................8

Bankruptcy Code ............................................................................................................................8

Illinois Wage Payment and Collection Act........................................................................... *passim*

Illinois Whistleblower Act........................................................................................................1, 5

United States Code (the "Bankruptcy Code") ................................................................................4

**Other Authorities**

Fed. R. Civ. P. 26(c)(1)..................................................................................................................10

U.S. Const., Art. VI, cl. 2................................................................................................................8

iii

Defendants Ashok Nayyar ("Nayyar"), Jeffrey Kelly ("Kelly"), Jonathan Tunis ("Tunis"), Barry Best ("Best" and, collectively, the "Individual Defendants"), and Pharmacy Management LLC ("Pharmacy Management" and, together with the Individual Defendants, the "Defendants")[1] respectfully submit this memorandum of law in support of their motion for a status conference and to stay discovery in this matter (the "Motion").

## PRELIMINARY STATEMENT

As this Court is aware, this matter involves claims asserted by Plaintiff Rinku Patel, PharmD ("Plaintiff") against the former managers of Optio Rx, LLC ("Optio Rx") and several individual defendants, three of whom served on Pharmacy Management's board of managers. Plaintiff was employed by Optio Rx as its Chief Executive Officer until February 5, 2024, several months before the company filed for Chapter 11 bankruptcy. Plaintiff has asserted (i) claims under the Illinois Wage Payment and Collection Act ("IWPCA"), related to purported unpaid categories of compensation provided for in the employment agreement between her and OptioRx, including a discretionary bonus, (ii) a claim for retaliatory discharge under the Illinois Whistleblower Act, and (iii) claims for breach of contract based on her employment agreement with Optio Rx.

On August 6, 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the Optio Rx bankruptcy matter[2] (the "Bankruptcy Matter") approving a stipulation between Optio Rx and Plaintiff (the "Stipulation"). At all times, Plaintiff was represented by counsel in connection with her claims in the Bankruptcy Matter, who is quite aware of this litigation and negotiated the Stipulation on her behalf.[3] The Stipulation

---

[1] Undersigned counsel does not represent CBC Pharma in this action.
[2] The matter is consolidated with several affiliated debtors and now captioned *In re: Pet Apothecary LLC*, Case No. 24-11192 (TMH) (Bankr. D. Del.).
[3] DLA Piper LLP, counsel for Defendants in this case, has had no involvement in the Bankruptcy Matter. Based on public records, however, it is clear that Plaintiff has been represented by Maria Aprile Sawczuk of the firm of Goldstein & McClintock LLP (who signed the Stipulation on

1

includes a general release from Plaintiff, pursuant to which she released "the Reorganized Debtors … and each of their respective present and former shareholders and its and their respective officers, directors, partners, members, managers, employees, agents, attorneys, and shareholders, and their successors, assigns and other representatives from any and all claims, controversies, actions, causes of action (including, without limitation, all claims, controversies, actions and causes of action arising under state or federal law including chapter 5 of the Bankruptcy Code or regulations) … and liabilities of any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise, reported or unreported, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether or not now or heretofore known, suspected, or claimed." Given the clear and unambiguous language of this broad release, Plaintiff indisputably has released her claims against Defendants in this action.

Notwithstanding the unambiguous language in the Stipulation, the inherent authority of the bankruptcy court to approve third-party releases (and this Court's authority to enforce such releases), Plaintiff has refused to dismiss her claims. According to Plaintiff's counsel, any releases of IWPCA claims are void as a matter of state law, no matter how they were negotiated, agreed-to, or approved. While that position is entirely unsupported under the circumstances presented here and completely disregards basic tenets of federal preemption (as discussed in further detail

---

Plaintiff's behalf), in the Bankruptcy Matter since August 2024. Moreover, Plaintiff's counsel in the Bankruptcy Matter was well aware of this case since, among other things, she represented Plaintiff in connection with the motion filed by Optio Rx and the other debtors in response to Plaintiff's filing of this lawsuit in violation of the automatic stay. *See* Declaration of Joseph A. Piesco ("Piesco Decl."), Ex. D (*Dr. Rinku Patel's Response to Debtors' Motion to Enforce the Automatic Stay and for Related Relief*). The Bankruptcy Court ultimately sanctioned Plaintiff for her violation of the automatic stay. *See* Piesco Decl., Ex. E (*Order Granting Debtors' Motion to Enforce the Automatic Stay and for Related Relief*).

2

below), Plaintiff has articulated no basis at all as to why the release would not – at a minimum – require dismissal of her non-IWPCA claims.

Given Plaintiff's refusal to dismiss her claims in the face of this unequivocal general release which plainly extends to each of the Defendants in this matter, Defendants respectfully request the scheduling of a status conference so that the Parties can establish a briefing schedule for a motion to enforce the release, and to discuss a stay of other case deadlines while this potentially case-dispositive question is being adjudicated.

## BACKGROUND

### I.     The Parties.

Plaintiff was employed as the CEO of OptioRx from approximately February 1, 2022 to February 5, 2024.  Second Amended Complaint ("SAC") ¶¶ 8, 25.  She executed an employment agreement (the "Employment Agreement"), which was signed by CBC Pharma HoldCo, LLC and Cold Bore Capital Management, LLC, on behalf of her former, now bankrupt, employer, OptioRx. *See* SAC ¶ 28, Ex. A.  In November of 2022, Pharmacy Management replaced Cold Bore and CBC Pharma as OptioRx's manager (although the Employment Agreement was never assigned to, or assumed by, Pharmacy Management).  SAC ¶ 152.

Funds managed by MC Credit Partners LP ("MCCP"), together with other institutional investors, were OptioRx's senior lenders prior to its bankruptcy.  ECF No. 22 at ¶ 6.  Three of the Individual Defendants—Kelly, Tunis, and Best—are MCCP employees who served on Pharmacy Management's Board of Managers.  *Id.* at ¶ 7.[4]  Nayyar is MCCP's Managing Director and Chief Investment Officer.  *Id.* at ¶ 7.

---

[4] Additionally, Pharmacy Management's Board of Managers included an independent member who was chairman of the special committee.  Plaintiff briefly served on Pharmacy Management's Board before voluntarily resigning, but she continued in her role as CEO.  *Id.* ¶ 7.

3

## II. Plaintiff's Agreement to a General Release of Claims in the Optio Rx Bankruptcy.

Optio Rx filed for bankruptcy protection under Chapter 11 of Tile 11 of the United States Code (the "Bankruptcy Code") on June 7, 2024. *See In re Optio Rx, LLC*, Case No. 24-11188 (TMH) (Bankr. D. Del.) at No. 1. The Bankruptcy Court confirmed a Plan of Reorganization on October 17, 2024. *See id.* at No. 484.

On August 6, 2025, the Bankruptcy Court entered an order in the Bankruptcy Matter approving the Stipulation.[5] The Stipulation includes a general release from Plaintiff negotiated by Plaintiff's bankruptcy counsel (the "Release") that provides in pertinent part:

> Upon the Stipulation Effective Date, except for the obligations set forth in this Stipulation, Dr. Patel, on behalf of herself and all parties claiming by, through or under her, hereby release and forever discharge the Reorganized Debtors, the Reorganized Debtors' estates (including any and all predecessors and affiliates), and each of their respective present and former shareholders and its and their respective officers, directors, partners, members, managers, employees, agents, attorneys, and shareholders, and their successors, assigns and other representatives from any and all claims, controversies, actions, causes of action (including, without limitation, all claims, controversies, actions and causes of action arising under state or federal law including chapter 5 of the Bankruptcy Code or regulations), demands, debts, damages, losses, costs, attorneys' fees, expenses, monies due on account, obligations, judgments and liabilities of any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise, reported or unreported, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether or not now or heretofore known, suspected, or claimed.

*See* Piesco Decl., Ex. A at ¶ 7.[6]

---

[5] The Stipulation allowed (*i.e.*, approved for payment from the debtor's estate) and fixed certain claims against Optio Rx filed by Plaintiff in connection with the bankruptcy. *See* Piesco Decl., Ex. A at ¶ 2.

[6] The Stipulation also provides that "[t]he Bankruptcy Court shall retain jurisdiction to interpret, enforce, and resolve any disputes arising under or related to this Stipulation." *See id.* at ¶ 8. However, given the pendency of this matter and this Court's asserted jurisdiction over Plaintiff's claims, Defendants elected to raise these issues first with this Court.

4

### III. Defendants' Request that Plaintiff Dismiss Her Claims Based on the Stipulation.

On August 26, 2025, Defendants' counsel sent a letter to Plaintiff's counsel, attaching a copy of the Stipulation and requesting that Plaintiff dismiss her claims based on the Release. *See* Piesco Decl., Ex. B. The parties' counsel subsequently exchanged emails on August 29, 2025, wherein Plaintiff's counsel stated that Plaintiff would not agree to dismiss her claims and that the Release "will not be effective to release Dr. Patel's claims in their totality" because certain claims "cannot be released." *Id.*, Ex. C. Specifically, Plaintiff's counsel contends that individuals (including Plaintiff) cannot waive or release IWPCA claims. *See id.* During a call between counsel on September 8, 2025, Plaintiff's counsel further stated that the Release was not effective as to any of Plaintiff's claims because Plaintiff did not knowingly execute the stipulation and did not realize she was releasing her claims in this matter (despite being represented by counsel in connection with the Bankruptcy Matter who was well aware of this lawsuit). Plaintiff's counsel has not, however, articulated any more specific reason as to why Plaintiff's remaining claims should not be dismissed as a result of the Release.

### IV. Plaintiff's Causes of Action.

Plaintiff asserts eight causes of action in the SAC. Counts I to III allege that Defendants violated the IWPCA by "permit[ting] OptioRx to withhold" Plaintiff's severance pay, SAC ¶ 107, "direct[ing] OptioRx" to withhold Plaintiff's 2023 bonus, *id.* ¶ 117, and "direct[ing] OptioRx" not to reimburse Plaintiff for legal fees allegedly incurred on OptioRx's behalf, *id.* ¶ 127. Count IV alleges that Defendants violated the Illinois Whistleblower Act because they allegedly "terminated [Plaintiff] on behalf of OptioRx" for refusing to engage in activities that purportedly violated certain laws and regulations. *Id.* ¶ 137.

The last four counts are asserted against CBC Pharma and Pharmacy Management only. In Count V, Plaintiff alleges retaliatory discharge, claiming that Pharmacy Management inherited

5

CBC Pharma's obligations under Plaintiff's Employment Agreement, and that it is therefore responsible for her termination (despite no alleged actions taken by Pharmacy Management to terminate Plaintiff's employment). *Id.* ¶¶ 141, 148. Counts VI through VIII allege breach of Plaintiff's Employment Agreement under the same theory of privity (*i.e.*, that Pharmacy Management purportedly inherited the obligations of CBC Pharma and is bound by the agreement). *Id.* ¶¶ 151–152, 158–59, 167–68.[7]

## ARGUMENT

### I. Defendants Seek a Status Conference to Address the Effect of the Release

Defendants submit that a status conference is warranted to address the effect of the Release on Plaintiff's claims and to resolve the dispute between the parties as to same.

Consistent with Plaintiff's counsel's August 29, 2025, email communication, Defendants anticipate that Plaintiff will take the position that the Release is ineffective to release Plaintiff's IWPCA claims.[8] In the August 29, 2025, email, Plaintiff's counsel cites several cases, not one of which addresses the circumstances presented here (or the issue of federal preemption):

- *People ex rel. Martin v. Lipkowitz*, 225 Ill. App. 3d 980 (3d Dist. 1992), merely states that IWPCA suits are immune from general statutory limitation periods, and has nothing to do with bankruptcy releases or releases of IWPCA claims.

- *Mueller Co. v. Dep't of Labor*, 187 Ill. App. 3d 519 (4th Dist. 1989), merely states the objective of the IWPCA, and has nothing to do with bankruptcy releases or releases of IWPCA claims.

---

[7] During a May 6, 2025, court conference, and in response to a motion to dismiss filed by Defendants, Plaintiff voluntarily withdrew and dismissed the breach of contract claims without prejudice. *See* ECF No. 49.
[8] Defendants note that Plaintiff has provided no basis whatsoever to suggest that the Release does not bar Plaintiff's non-IWPCA claims, and therefore at a minimum there should be no dispute that such claims must be dismissed with prejudice.

6

- *Integrated Genomics, Inc. v. Kyrpides*, 2010 WL 375672 (N.D. Ill. Jan. 26, 2010), involved the striking of a failure to mitigate affirmative defense to an IWPCA claim, and has nothing to do with bankruptcy releases or releases of IWPCA claims.

- *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 WL 1403007 (N.D. Ill. Nov. 9, 2001); *O'Brien v. Encotech Constr. Servs.*, 183 F. Supp. 2d 1047, 1049 (N.D. Ill. 2002); and *Lewis v. Giordano's Enters.*, 397 Ill. App. 3d 581 (1st Dist. 2009), all involve private releases of IWPCA claims presented directly by an employer to employees (and putative class members) that were not negotiated and were signed without the involvement of counsel (and outside of the bankruptcy context).

In short, while several of these cases involved the voiding of IWPCA releases due to considerations of public policy on state law grounds, none stand for the proposition that individuals can never privately settle or release IWPCA claims as a matter of law.[9] And, critically, the Release was not some clandestine private agreement foisted upon Plaintiff, but a formal stipulation negotiated by counsel who was well aware of this case, and approved by the Bankruptcy Court. *See* Piesco Decl., Ex. F (*Certification of [Reorganized Debtors'] Counsel*) (stating that "the Reorganized Debtors engaged in discussions with Dr. Patel to consensually resolve Claim No. 72, the Omnibus Objection, and the Opposition" and "reached an agreement to reduce and allow Claim No. 72 … pursuant to the terms of the stipulation" attached as an exhibit).

Moreover, "because of the supremacy clause, the [Bankruptcy] Code and the orders of the

---

[9] Indeed, there are numerous recent examples of courts referencing or otherwise taking notice of negotiated settlements and releases of IWPCA claims. *See, e.g.*, *Washington v. Cook Cnty.*, 2025 U.S. Dist. LEXIS 60516, at *20 (N.D. Ill. Mar. 31, 2025); *Forbus v. CF Remodeling, LLC*, 2024 U.S. Dist. LEXIS 129079, at *4 n.1 (S.D. Ill. July 22, 2024); *Iannotti v. Wood Grp. Mustang*, 2023 U.S. Dist. LEXIS 170811, at *2 (S.D. Ill. Sept. 25, 2023); *Graham v. Village of Dolton*, 2023 Ill. App. Unpub. LEXIS 766, at *P7 (1st Dist. May 19, 2023).

7

bankruptcy court acting pursuant thereto control[] over otherwise valid Illinois statutes, supreme court rules, [and] common law principles … ." *Wehmeier v. UNR Indus., Inc.*, 213 Ill. App. 3d 1095, 1096 (4th Dist. 1990); *see also Nelson v. La Crosse Cnty. Dist. Atty. (State of Wisc.)*, 301 F.3d 820, 837 (7th Cir. 2002) ("Because of Article I's grant of exclusive power to the federal government to legislate in the bankruptcy context, and by virtue of the Supremacy Clause, a State may very well have its rights affected by a bankruptcy proceeding."); *Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992) (explaining that "it is well settled that the Supremacy Clause dictates that when state law is contrary to federal bankruptcy law, the bankruptcy provisions prevail").[10] Accordingly, even if releasing IWPCA claims somehow implicated Illinois public policy (and it does not in this context), the Bankruptcy Court's order approving the Stipulation and the included general release trumps the public policy considerations of the IWPCA.

Under Illinois law, the same standards apply to the enforceability of bankruptcy releases as with other releases – "unless mutual mistake or fraud has occurred, and because settlements are encouraged and favored, an unambiguous release will be given effect." *Tradex Global Fund SPC*

---

[10] The preemption of state law by a bankruptcy court discharging its function under the Bankruptcy Code is universally recognized across the federal judicial circuits. *See In re Federal-Mogul Global Inc.*, 684 F.3d 355, 375 (3d Cir. 2012) ("It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law."); *In re Brentwood Outpatient, Ltd.*, 43 F.3d 256, 264 (6th Cir. 1994) ("The Supremacy Clause mandates that these policy decisions by Congress pursuant to its bankruptcy power displace the normal operation of [state] statutory provisions … to the extent that the latter command contrary results."); *In re Goerg*, 844 F.2d 1562, 1565 (11th Cir. 1988) (noting that "[o]wing to the supremacy clause, federal bankruptcy law preempts state law"); *Regan v. Ross*, 691 F.2d 81, 83 n.5 (2d Cir. 1982) ("State law that conflicts with a mandate of the Bankruptcy Act … is invalid under the Supremacy Clause of the Constitution.") (internal quotations and citation omitted); *In re Kanter*, 505 F.2d 228, 231 (9th Cir. 1974) (confirming that "any state legislation which frustrates the full effectiveness of federal law [in the bankruptcy context] is rendered invalid by the Supremacy Clause")

8

*Ltd. v. Solaris Opportunity Fund L.P.*, 2025 WL 2144796, at *6 (1st Dist. July 29, 2025).[11] It is the burden of a plaintiff, not a defendant, to "provide clear and cogent evidence that [a] facially valid release [is] invalid." *Wilmington Sav. Fund Soc'y, FSB v. Herzog*, 2023 IL App. (1st) 221467-U, 52 (1st Dist. 2023). Moreover, "[i]t is well established a general release is valid as to all claims to which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Davis v. Cagbabuana*, 2024 U.S. Dist. LEXIS 199850, at *8 (N.D. Ill. Nov. 4, 2024) (quoting *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990)). Finally, where – as here – the language of a release is unambiguous, a plaintiff who is represented by counsel in negotiating a release is "presumed to have made an effective waiver." *Pierce v. Atchison, T. & S.F. Ry.*, 65 F.3d 562, 570 (7th Cir. 1995). Importantly, there is no question that the Release included in the Stipulation is unambiguous and sufficiently broad so as to encompass Plaintiff's claims against Defendants in this action and that Plaintiff was represented by counsel in connection with the negotiation of the Release. Plaintiff cannot possibly argue otherwise, nor can she reasonably take that position that neither she nor her counsel knew that this general release would impact her claims in this matter.[12]

---

[11] Third-party releases entered into in connection with bankruptcy matters – like the one at issue here – are enforceable in this Circuit. *See, e.g.*, *Matter of Specialty Equip. Cos., Inc.*, 3 F.3d 1043 (7th Cir. 1993) (upholding validity of consensual release of non-debtors from fraud and securities claims that could have been brought by debenture holders); *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 2015 WL 11255491 (N.D. Ill. Aug. 21, 2015) (holding that a broad release and injunction agreed to in connection with a bankruptcy plan's provisions barred claims against non-debtor affiliates); *In re Conseco*, 301 B.R. 525, 527-28 (Bankr. N.D. Ill. 2003) (confirming that consensual third-party releases are permissible).

[12] It strains credulity to suggest that Plaintiff, Plaintiff's counsel in this matter, and Plaintiff's counsel in the Bankruptcy Matter (who was well aware of the existence of this lawsuit) were all unaware that the Release would have the effect of releasing Plaintiff's claims in this case.

## II. A Stay of Discovery is Warranted

District courts have broad discretion over discovery matters. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); *see* Fed. R. Civ. P. 26(c)(1). That discretion includes the authority to stay discovery pending resolution of a motion. *Vital Proteins, LLC v. Ancient Brands, LLC*, 2023 U.S. Dist. LEXIS 155177, at *6-7 (N.D. Ill. Sept. 1, 2023). Such stays "are often appropriate where the motion … can resolve the case." *Id.* at *7 (citation omitted). That is true for merits-based motions as well as motions based on threshold procedural issues. *See Bilal v. Wolf*, 2007 U.S. Dist. LEXIS 41983, at *4 (N.D. Ill. June 6, 2007).

In determining whether to stay discovery, a court "may consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Rodriguez v. Ford Motor Co.*, 2022 U.S. Dist. LEXIS 41641, at *1-2 (N.D. Ill. Mar. 9, 2022) (quoting *Sadler v. Retail Props.*, 2013 U.S. Dis. LEXIS 206567, at *1 (N.D. Ill. Sept. 27, 2013)). All three factors support a stay here.

### A. A Stay Will Simplify the Issues, Streamline the Case, and Reduce the Burden of the Litigation on the Parties and the Court.

Here, that Defendants' motion "could potentially be dispositive weighs in favor of staying discovery." *Rodriguez*, 2022 U.S. Dist. LEXIS 41641, at *3; *see also Bilal*, 2007 U.S. Dist. LEXIS 41983, at *2, *4 (noting that "[l]imitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim on which relief can be granted" and that "[s]tays of discovery are not disfavored and are often appropriate where the motion to dismiss can resolve the case"). This Court previously ordered a stay based in part on a finding that resolution of a dispositive motion would "simplify the issues and streamline the litigation."

10

*Northfield Ins. Co. v. Kontos*, No. 1:23-cv-15164, ECF No. 56 (N.D. Ill. May 16, 2024).[13] Clearly, the Release is potentially dispositive of this entire case, as Defendants submit that the Release forecloses and requires dismissal of all of Defendants' claims.

Furthermore, staying discovery until the status conference (and/or until a subsequent motion to dismiss is resolved) will conserve significant party and Court resources, which strongly weighs in favor of a stay. *Rodriguez*, 2022 U.S. Dist. LEXIS 41641, at *5; *Su v. Su*, 2022 U.S. Dist. LEXIS 253154, at *5 (N.D. Ill. Apr. 11, 2022); *Piekarski v. Amedisys Ill., LLC*, 2013 U.S. Dist. LEXIS 74871, at *8 (N.D. Ill. May 28, 2013) (granting a stay of discovery where it would "reduce the burden of litigation on the parties and the courts and eliminate duplicative discovery and rulings"). At the very least, there seems to be no dispute that the Release requires dismissal of the remaining claims asserted in the Amended Complaint, which would significantly curtail the scope of discovery in this matter. Thus, it is in both parties' (and the court's) interest to stay discovery pending resolution of the status conference and any subsequent motion to dismiss.

### B.    A Stay Will Not Unduly Prejudice Plaintiffs.

Finally, a stay of discovery will cause no prejudice. No undue prejudice will result from a "relatively short stay." *Shanmugavelandy v. AbbVie*, No. 1:22-cv-2975, ECF No. 65, at 2; *see also Rodriguez*, 2022 U.S. Dist. LEXIS 41641, at *2 (noting that "the general prejudice or waiting for the Court to rule on the motion to dismiss, which it plans to do expeditiously, is not a reason to deny the stay"). Defendants anticipate that the Court will schedule a status conference to address this issue in the near future. And, even if the Court requires a motion and briefing on the issue of whether the Release is dispositive for all of Plaintiff's claims, discovery, which still is in its infancy, will be stayed for a few months at most. Conversely, Defendants will be materially

---

[13] This decision, which is not available online through Lexis or Westlaw, is attached as Exhibit H to the Piesco Decl.

11

prejudiced if discovery proceeds. Plaintiff has served broad-based written discovery into all aspects of the eight counts asserted in the Amended Complaint. Absent a stay, Defendants will incur material additional litigation expenses associated with having to respond to discovery and reviewing and producing documents concerning claims that clearly require dismissal.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (i) schedule a status conference to address the dispute concerning Plaintiff's general release of claims entered into in connection with the Optio Rx bankruptcy, and (ii) stay discovery pending resolution of those issues.

Dated: September 15, 2025
Chicago, IL

**DLA PIPER LLP (US)**

By: /s/ Yan Grinblat
Yan Grinblat (IL-6328805)
444 West Lake Street, Suite 900
Chicago, IL 60606
T: (312) 368-4000
F: (312) 236-7516
yan.grinblat@us.dlapiper.com

Joseph A. Piesco (*pro hac vice*)
Ryan P. O'Connor (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020-1104
T: (212) 335-4500
F: (212) 335-4501
joseph.piesco@us.dlapiper.com
ryan.oconnor@us.dlapiper.com

*Attorneys for Defendants Pharmacy Management LLC, Ashok Nayyar, Jeffrey Kelly, Jonathan Tunis, and Barry Best*

## CERTIFICATION OF CONFERENCE

I certify that counsel for Ashok Nayyar, Jeffrey Kelly, Jonathan Tunis, Barry Best, and Pharmacy Management LLC ("Defendants") met and conferred with counsel for Plaintiff Rinku Patel, PharmD ("Plaintiff") via teleconference on Monday, September 8, 2025 to determine whether it would be possible to resolve or narrow the issues in dispute. Counsel for the parties agreed that a status conference was necessary so that the Court could address the release issue and further agreed to an extension of the discovery deadlines in this matter for 60 days. However, Plaintiff's counsel did not agree to join in the request for a stay of discovery (and disputes the enforceability of the release at issue, asserting that it is not effective to release Plaintiff's claims). Plaintiff's counsel has represented that she intends to submit a separate filing on this issue.

/s/ Yan Grinblat
Yan Grinblat

13