# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>The Pet Apothecary LLC,<br><br>        Reorganized Debtor.[1] | Chapter 11<br><br>Case No. 24-11192 (TMH)<br><br>**Related Docket Nos. 154, 162 and 163** |

### DR. RINKU PATEL'S REPLY IN FURTHER SUPPORT OF MOTION TO RESCIND SETTLEMENT AGREEMENT AND / OR MODIFY OR SET ASIDE ORDER APPROVING STIPULATION BY AND BETWEEN REORGANIZED DEBTORS AND DR. RINKU PATEL REGARDING PROOF OF CLAIM NO. 72

Dr. Rinku Patel ("Dr. Patel" or the "Claimant"), through her undersigned counsel, hereby submits this reply in further support of the *Motion to Rescind Settlement Agreement and / or Modify or Set Aside Order Approving Stipulation by and between Reorganized Debtors and Dr. Rinku Patel Regarding Proof Of Claim No. 72* [Docket No. 154] (the "*Motion*"), and in response to the Debtors' and the Ashok Nayyar, Jeffrey Kelly, Jonathan Tunis, and Barry Best (collectively the "*Individual Defendants*"), and Pharmacy Management LLC ("*Pharmacy Management*" and together with the Individual Defendants, the "*Defendants*") objections to the Motion [Docket Nos. 162 and 163] (collectively, the "*Objections*") , and states as follows:

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is The Pet Apothecary, LLC (6074). The address of the Reorganized Debtor's corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062. On May 2, 2025, the Court entered an order closing the chapter 11 cases of The Pet Apothecary, LLC's debtor affiliates (collectively, the "**Affiliated Debtors**"). A complete list of the Affiliated Debtors, along with their federal tax identification numbers, is available through the Court's CM/ECF electronic case filing system (https://ecf.deb.uscourts.gov/) under Case No. 24-11192, at Docket No. 4.

A. **The Agreement is unconscionable**

1.  The Debtors conclusively declare that the standard for unconscionability is unmet in this case without providing much in the way of argument other than asserting that the unconscionable language in question was in prior drafts and that the standard is a high one.

2.  Delaware Courts have found unconscionability in a variety of contexts such as: where there are attempts to limit or exclude consequential damages for personal injuries, *Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 171 (Del. Sup. 1986) (finding that waivers were too expansive); where there are high interest rates with balloon payments *see James v. Nat'l Fin., LLC,* 132 A.3d 799 (Del. Ch. 2016) (finding that the unfair terms were unconscionable); and where alimony was too extensive and unchanging *see Stewart v. Stewart,* 41 A.3d 401 (Del. 2012) (ruling that alimony that extended to wife's death was excessive). Notably, one of the key areas of exemption to the "contractarian" principles in Delaware is where there is a dispute between an employee and a former employer, which is the case we have here. "There are, however, public policy exceptions to this general rule [favoring enforcement of contract terms]. One of these exceptions is a policy against oppression in employment contracts." *Lyons Ins. Agency, Inc. v. Wark*, No. 2017-0348-SG, at *10 (Del. Ch. Jan. 28, 2020).

3.  While it is true that Dr. Patel's employment-related claim of $1,527,074.55 would continue as an unsecured claim, the Debtors do not dispute that it would not be close to the final amount actually delivered to Dr. Patel upon the conclusion of this Bankruptcy. Realistically, the $13,000 received is likely the only amount she will receive related to this claim, absent some unlikely windfall. Furthermore, the asserted amount in the claim is merely an estimate of additional damages that may be available once Dr. Patel is allowed to litigate the underlying claim against the Defendants.

4.  The fact that this case is in bankruptcy puts the claimant at a significant disadvantage in negotiating, because the likelihood of being made whole in a bankruptcy case is much lower than outside an ordinary litigation context. The recourse that a claimant has against a debtor in bankruptcy is significantly more limited by statute. Additionally, this is a case of a former employee against an employer, which is a *per se* example of unequal bargaining power.

5.  The effect of this stipulation would deprive Dr. Rinku of her rights in other forums with parties who were not party to the contract and who are not debtors in a bankruptcy case. It would give priority to form over substance, and permit boilerplate language to prevail where there ought to be an express identification of parties to be released from their liabilities. In fact, it is unclear why the Debtors were even negotiating on behalf of the Defendants, especially if the Defendants may have an indemnification claim against the Debtors, as asserted in the Debtors' Objection.[2] Counsel for the Debtors never included counsel for the Defendants in the email exchanges with counsel for Dr. Patel, and never disclosed that they were also negotiating other parties' interests.

6.  The exchange of emails cited in the Debtors' Objection demonstrated that the parties intended only to release the claim presented in the Bankruptcy Court. Nothing in that email exchange supports the contention that Claimant intended to release all claims against the non-party Defendants.

**B. The mistake goes to the substance of the consideration**

7.  The Debtors and Defendants would not be objecting to a modification to remove the non-debtor releases if they didn't believe the releases went to the substance of the agreement. The purpose of the agreement from the Debtors' perspective was to resolve the claim and release

---

[2] This argument is addressed below.

the Debtors from any further obligations. The Defendants want to obtain a release without any consideration, without disclosing that the Debtors were negotiating on their behalf, and without expressly naming them, but rather relying on standard boilerplate release language. If this were not essential, why would the Objecting Parties fight to limit the scope of the release?

8. The scope of release identified in *Obaitan v. State Farm*, C.A. No. 14318, (Del. Ch. Apr. 17, 1997) referenced by the Debtors is not appropriate, as that case dealt with the scope of release from a personal injury arising from a car accident, not which parties were to be released.

**C. The mistake was during the ordinary care**

9. Dr. Patel cannot reasonably be expected to identify the effect of boilerplate release language. As sophisticated as she is in matters of running a pharmaceutical company, that does not necessarily translate to deciphering the highly technical language of boilerplate release language used in a bankruptcy stipulation. If the Debtors had been upfront about their intent to include the Defendants in the release, they should have named the Defendants in their release; otherwise, the Debtors are expecting Dr. Patel to make legal conclusions regarding what is otherwise ubiquitous release language that is indecipherable to the average person.

10. When analyzing this prong, Delaware courts have looked at the effect it will have on the parties. "[I]t is grounded in a perception of fairness to the beneficiary of unconscionable contracts." *Ryan v. Weiner*, 610 A.2d 1377, 1386 (Del. Ch. 1992). As noted in the Debtors' objection, the parties can be restored to the status quo, whereas sustaining the contract would disproportionately affect the Claimant's relationship with the Defendants, who were not parties to the contract and were not involved in the negotiations.

### D. The Status Quo Can Be Restored Easily

11. In paragraph 39 of the Debtors' Objection, the Debtors actually *acknowledge* that the status quo can be restored upon rescission of the contract. The only performance on the Debtors' side was the payment of funds, which can easily be reversed. They point to no other acts performed *by the Debtors* in reliance on the releases *of the Defendants*, because there are none.

12. The Debtors complain that they could be liable for indemnification if Dr. Patel is successful in her case in Illinois. However, any such claim would be unsecured and would have no real impact on the reorganized Debtors. The language in the Plan (as noted in Defendants' Objection at ¶ 8) does not elevate any indemnification claim, nor could it under the Bankruptcy Code. These indemnifications, should they arise, are for acts performed pre-petition, and as such, would be pre-petition claims against the Debtors. Without any evidence that the Debtors must indemnify the Defendants, these concerns are insubstantial. *New Jersey v. W.R. Grace & Co.* (In re W.R. Grace & Co.), 412 B.R. 657, 667 (D. Del. 2009) (ruling that indemnification claims must be express and automatic to be related to Debtor's estate).

13. Moreover, public policy strongly disfavors releasing non-debtor third parties from liability, especially when no consideration for that release is paid and where the release is not expressly consensual between the parties. The Supreme Court looked at this question in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024), where it ruled that the Purdue Pharma bankruptcy should not be used as a shield to release the non-debtor third-party Sackler family from liability, unless that release was expressly consensual. While it was a narrow ruling in some respects, the public policy underlying the ruling is explicit: Bankruptcy should not be used by non-Debtors to escape liability. Similarly, in *In re BSA*, the Third Circuit criticized aspects of the plan that extended releases beyond the Debtors. *See In re BSA* 137 F.4th 126 (3d Cir. 2025). Subsequent

decisions in this Court have adopted this public policy. *See In re Kidde-Fenwal, Inc.*, No. 23-10638 (LSS), 2025 LX 161800 (Bankr. D. Del. June 16, 2025); *In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150 (Bankr. D. Del. 2025); *In re Smallhold, Inc.*, 665 B.R. 704 (Bankr. D. Del. 2024).

14. Not only did the non-debtor Defendants not pay any consideration for the releases, but these parties did not grant Dr. Patel mutual releases. It is clear that there is no consideration for a release of potentially millions of dollars in claims. Dr. Patel had no reason to agree to this, and it is obvious that she did not.

**WHEREFORE**, based upon the foregoing, the Claimant, Dr. Rinku Patel, respectfully requests entry of an order (a) rescinding the Stipulation or, in the alternative, (b) either setting aside the order approving the Stipulation or in the alternative, modifying the order to preserve Dr. Patel's right to pursue claims against the non-debtor parties in other forums (along with any other relief as may be just and proper).

Dated: October 16, 2025         **GOLDSTEIN & MCCLINTOCK LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk (DE Bar No. 3320)
Aaron R. Harburg (DE Bar No. 7207)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com
aaronh@goldmclaw.com

*Counsel for Dr. Rinku Patel*